Wilma MACHOST *v.* Gerald M. SIMKINS

CA 03-867                                              158 S.W.3d 726

Court of Appeals of Arkansas
Division I
Opinion delivered April 14, 2004

48

*The Brad Hendricks Law Firm*, by: *Phyllis B. Eddins*, for appellant.

*Lyons, Emerson & Cone, P.L.C.*, by: *Scott Emerson*, for appellee.

ANDREE LAYTON ROAF, Judge. Wilma Machost appeals from the denial of her motion for new trial after a jury returned a verdict in her favor for $2,000 in her negligence action against appellee Gerald M. Simkins. Simkins's liability was not in dispute. Machost had incurred $10,000 in medical expenses resulting from the accident, and Simkins conceded to the jury that Machost's medical bills were both reasonable and necessary. On appeal, Machost

argues that the trial court erred in denying the motion because (1) the jury failed to consider all issues relating to her claim for damages, and (2) the jury's verdict was clearly against the preponderance of the evidence. We agree that the trial court erred with respect to Machost's second point on appeal, and reverse and remand for a new trial.

At the March 2003 trial, the following facts were established. Machost and Simkins were involved in a car accident. Simkins's vehicle struck a vehicle in which Machost was a passenger. Simkins admitted liability and the case was tried to a jury on the issue of damages. In opening statements, Machost's attorney set out the facts of the case and requested a verdict for Machost's medical expenses and pain and suffering. She explained that her medical bills amounted to about $10,000, including approximately $3,000 from the emergency room, and approximately $5,000 for physical therapy. At the end of her statement, she requested an award for medical expenses and for pain and suffering.

The investigating police officer testified concerning the details of the April 2000 accident, stating that the total damage to Machost's car was approximately $3,000. Machost testified that when she was struck, she thought her head had been "blown off." She was taken to the emergency room where she was treated for headache, chest pain, and a neck injury. She was prescribed pain medication, which she admitted she did not take regularly, opting instead to take Advil. She completed six months of physical therapy, but testified that it did not completely alleviate her pain. Machost testified that her injuries made her home life difficult and that she could not move her neck without pain. She stated that her condition did not begin to improve until one year after the accident. Machost admitted that she had not returned to her doctor after completing physical therapy and had not seen a doctor about her condition since July 2000.

Dr. George Guntharp, Machost's family practitioner, first treated her one week after the accident for chest pain. After reviewing the emergency-room file, he discovered that Machost complained of a head injury and pain under her right breast. She was diagnosed with a closed-head injury with contusion and loss of consciousness. Guntharp testified that Machost's complaints of headaches were consistent with a closed-head injury, which is essentially a concussion. Guntharp continued treating Machost, noting her headaches, severe neck pain, and limited range of motion. He ordered a CT scan, and prescribed an anti-inflammatory medication and a regimen of physical therapy.

Guntharp stated that Machost's treatment was part of overseeing the normal healing process. He said that it was unusual that Machost would have symptoms for over two years and opined that her injury should have resolved by then. Guntharp concluded by stating that he had not seen Machost in over two years and that he would expect her to return for treatment if she was in fact still having trouble.

During the trial, Simkins's counsel made the following opening statements to the jury:

> We don't dispute, [Simkins] does not dispute that he should be, even though it's a shame physical therapy is so expensive but they provide a valuable service and *we don't dispute that we're responsible for, for her medical bills. What we are arguing about here really is the degree of pain and suffering that Mrs. Machost claims to have.* (Emphasis added.)

* * *

> [O]ne of the things that you'll have to answer as the jury in determining *the money, the compensation that she gets for her pain and suffering* is why she hasn't complained of any headaches or neck pain in almost two and a half years even though she's been to physicians since that time. (Emphasis added.)

During closing argument, Machost's counsel stated that her medical expenses were reasonable and that "counsel [for Simkins] even conceded in opening that there was not any dispute about the medical expenses so I think those are real clear." She asked the jury to award Machost $10,000 for her medical expenses, and $12,000 for pain and suffering, for a total of $22,000.

For his part, Simkins's counsel stated the following during closing argument:

> You know it's a shame that we have the costs of medical care now in our society but she's gotten very good medical care. You didn't hear her dispute any of that really.

* * *

> Now, it's a shame that medical costs are so expensive nowadays but it's a reality that we have to live with in our society. *The expense of the CAT scan, which was negative, and the medical bills which this lady incurred, you know, Hoss Simkins unfortunately acknowledges that he's responsible for that.*

*The issue as I said in opening statement is what we should pay, what you should award for pain and suffering. . . . It's the same type of thing to a different part of your body, and so the medical bills that this lady incurred, the $6,000 in, in the physical therapy which she received, you know, we're responsible for that, we're not contesting that and that was a reasonable treatment although it was exorbitant, you know, but she needed that to fulfill the healing process that the body took.*

\* \* \*

Don't think for a minute that this doesn't affect each and every one of you. I think to award her more than $1500 for pain and suffering *in addition to the medical bills would be an injustice.* (Emphasis added.)

The jury was instructed that Simkins had admitted liability for any compensatory damages sustained by Machost and that they should fix the amount that would reasonably and fairly compensate her for the following elements of damages proximately caused by Simkins's negligence:

(A) The nature, extent and duration of any injury.

(B) The reasonable expense of any necessary medical care and treatment and services received, including transportation.

(c) Any pain and suffering and mental anguish experienced in the past.

The jury was also instructed:

Whether any of these elements of damage has been proved by the evidence is for you to determine.

The jury returned a general verdict for Machost in the amount of $2,000, for which the trial court entered judgment. Machost filed a motion for new trial the next day, to which she appended an affidavit of juror Russell Lee Miller, who asserted that, based on the statements of both counsel, the jury assumed that the $10,000 in medical bills had been resolved and would be paid automatically, and that the $2,000 awarded by the jury was only for her pain and suffering. Miller further attested that the jury had "made a mistake" and that had they realized they were to also decide on the medical bills, an award of $12,000 would have been

given. In her motion, Machost contended that, pursuant to Rule Civ. P. 59(a)(6), she was entitled to a new trial based on the verdict being clearly against the preponderance of the evidence. In response to the motion, Simkins asserted that (1) Rule 606(b) of the Arkansas Rules of Evidence bars impeachment of a verdict by evidence of the mental processes of the jury, (2) the jury had the power to reject even stipulated medical bills, and (3) that the reasonableness and necessity of medical expenses are always questions of fact to be decided by the jury. The trial court denied the motion for new trial, and Machost now appeals.

Machost first argues that the jury failed to consider all issues relating to her claim for damages. In support of her motion for new trial and for this argument, Machost relies on the affidavit from juror Russell Lee Miller asserting that the jury made a mistake.

Arkansas Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may *his affidavit* or evidence of any statement by him concerning the matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror. (Emphasis added.)

In *Watkins v. Taylor Seed Farm*, 295 Ark. 291, 748 S.W.2d 143 (1988), the appellant moved for a new trial based on allegations that certain jurors made disparaging remarks about the appellant's attorney. The appellant submitted affidavits in support of their motion, which set out the disparaging remarks. On appeal, the appellant argued that the trial court erred in failing to consider the affidavits. The supreme court stated that Rule 606 prohibits inquiries into the jury's deliberation. The purpose of this rule "is to attempt to balance the freedom of the secrecy of jury deliberation on the one hand with the ability to correct any irregularity in those deliberations on the other." *Id.* at 293, 748 S.W.2d at 144. Rule 606(b) requires that jury deliberations remain secret, unless it

is clear that the jury's verdict was tainted by some outside influence, for example a news broadcast or an unauthorized visit to the crime scene. *Id.*

In *Garner v. Finch*, 272 Ark. 151, 612 S.W.2d 304 (1981), the appellant appealed from the trial court's grant of a motion for new trial based on the jury being confused about the verdict forms and an improper damages award. The motion was accompanied by an affidavit of six jurors containing statements about jury deliberations. The trial court refused to consider the affidavits, deciding that Rule 606(b) precluded his consideration of the affidavit, and the supreme court agreed.

■ We agree that Rule 606(b) and our case law prohibited the trial court from considering Juror Miller's affidavit with the motion for a new trial. Likewise, those rules and precedent prohibit this court from considering Juror Miller's affidavit. Because Machost has not alleged that some outside influence affected the jury's deliberations, this court cannot consider the affidavit or its allegations that the jury was confused when it awarded Machost only $2,000.

■ Machost also argues that the jury's verdict was clearly against the preponderance of the evidence, pointing out that (1) she proved her medical expenses; (2) Simkins's counsel conceded to the jury that he owed them; and (3) the jury failed to award them. Generally, statements made by counsel in closing and opening arguments are not considered evidence. In *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003), the supreme court declined to accept statements the appellee had made during closing arguments in appellant's earlier case as proof of the value of appellant's claim. Barnes had alleged that Everett, her attorney, committed malpractice by advising her to settle a claim. To prove damages, Barnes attempted to use Everett's closing argument during the original trial as evidence of what her claim was worth. Barnes characterized these statements as admissions and argued that Everett's statements were substantive evidence of the value of her claim. The supreme court held that the statements were not admissions, stating, "We agree with the trial court that such statements made on behalf of a client and under the duty to zealously represent the client may not be characterized as personal admission on the attorney's part. Indeed, *statements made by attorneys*

*during opening statement and closing argument are not even considered as evidence at all." Id.* at 490, 95 S.W.3d at 479. (Emphasis added.)

On the other hand, in *Yeager v. Roberts*, 288 Ark. 156, 702 S.W.2d 793 (1986), the supreme court commented that the appellant's lawyer had conceded liability in his closing argument. The case involved a motor-vehicle accident in which appellant's truck ran the appellee's vehicle off the road. In his closing argument, the appellant's attorney stated, "We will concede the accident was our fault." Evidence of the appellee's damages was introduced, but the jury returned a verdict in favor of the appellant. The appellee moved for a new trial, and it was granted. The supreme court affirmed the grant of a new trial, holding that the trial court did not abuse its discretion. Similarly, in *Dovers v. Stephenson Oil Co., Inc.*, 354 Ark. 695, 128 S.W.3d 805 (2003), when discussing sufficiency of evidence supporting the appellant's claim for bodily injury, the supreme court mentioned "admissions" made during the appellee's opening and closing arguments that the appellant was seriously injured, and that a jury award of $125,000 would be appropriate. The court stated, "The appellees did not seriously contest the fact that Ms. Dovers was injured in this accident *and no reasonable juror could have concluded that she suffered no damages."* (Emphasis added.) However, the court affirmed the trial court's denial of the appellant's motion for new trial following a jury verdict for the appellee, noting that there was a dispute as to the appellee's negligence and a reasonable juror could have concluded that the appellee was not at fault in the accident.

■ Although the appellee's counsel's opening and closing statements are not evidence, based on *Roberts, supra,* and *Dovers, supra,* we are not convinced that the trial court was prohibited from considering counsel's concessions. Arkansas Rule of Civil Procedure 59 sets out eight grounds for a motion for new trial, including a verdict that is clearly contrary to the preponderance of the evidence, Ark. R. Civ. P. 59(a)(6) (2003), the provision that Machost relies upon. When a motion for new trial is made on the ground that the verdict was clearly against the preponderance of the evidence, then the standard of review is whether substantial evidence supports the verdict. *Depew v. Jackson,* 330 Ark. 733, 957 S.W.2d 177 (1997). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or another, beyond mere speculation or conjecture. *Id.* The verdict is given "the benefit of all reasonable inferences permissible in accordance with the proof." *Id.* at 736, 957 S.W.2d at 178.

In *Depew, supra,* the appellant moved for a new trial pursuant to Rule 59(a)(6), arguing that the verdict was clearly against the preponderance of the evidence. The appellant, Depew, was struck from behind by the appellee, Jackson, who admitted liability. The case was submitted to the jury on the issue of damages only, and Depew presented evidence of medical and surgical bills totaling over $15,000. The jury returned a $1,600 verdict, and Depew moved for a new trial. The supreme court affirmed the trial court's denial of the motion pursuant to Ark. R. Civ. P. 59(a)(6).[1] It held that substantial evidence supported the jury's verdict because there was evidence that the surgery and treatment of the appellant's condition was not proximately caused by the appellee's negligence, but was instead due to a preexisting condition. Given this evidence, the court stated that even though there was evidence of over $15,000 in medical bills, the jury could have found that the expenses were attributable to Depew's preexisting condition; therefore, the award of only $2,000 was not clearly against the preponderance of the evidence.

Accordingly, in considering whether the trial court erred in denying Machost's motion for new trial, we determined whether substantial evidence supports the jury's verdict. At trial, the evidence showed that Machost was treated for head and neck injuries as a result of the accident. She incurred $3,000 in medical bills for her treatment at the emergency room, including the cost for CT scans and other treatment. One week following the accident, Machost began treatment by Dr. Guntharp and he performed a CT scan. Guntharp also prescribed physical therapy. Machost incurred a $6,000 medical bill for the physical therapy.

■ Despite this evidence, the jury returned a $2,000 verdict. This case is unlike *Depew, supra,* where the jury reasonably excluded medical expenses because there was evidence that they were not causally related to injuries sustained in the car accident. In this case, Dr. Guntharp testified that all of Machost's treatment was a part of the normal healing process. While he questioned the length of Machost's healing period, he stated that Machost's

---

[1] In *Depew, supra,* the appellant also moved for a new trial pursuant to Ark. R. Civ. P. 59(1)(5), asserting that the jury's verdict was inadequate. We note that on review of a denial of a motion for new trial pursuant to subsection (a)(5) the standard of review is abuse of discretion, and the trial court must determine whether a fairminded juror could have reasonably fixed the award at the challenged amount. Although Machost challenges the amount of the verdict, she does not rely on subsection (a)(5).

complaints of headaches were consistent with her closed-head injury, and her neck pain was consistent with her vehicle being hit from behind. From the trial testimony and the concessions of Simkins's counsel during opening and closing argument, even giving the verdict the benefit of all reasonable inference, we find that substantial evidence does not support the verdict. The cost of medical expenses could not be excluded as being unreasonable or attributable to some other circumstance. As in *Dovers, supra,* we conclude that no reasonable juror could have determined that Machost suffered only $2,000 in damages where Simkins conceded the amount of medical bills and their necessity. Thus, the trial court erred in denying the motion for new trial.

██ Simkins argues that the jury must have found that Machost was not credible and that she overstated her injuries. He points out that Dr. Guntharp's testimony indicated that Machost's injury could have been caused by something other than the accident. On review, this court gives the judgment the highest probative value, taking into consideration all reasonable inferences deducible from it. *Esry v. Carden,* 328 Ark. 153, 942 S.W.2d 846 (1997). However, the inferences that Simkins suggests are not reasonable given all of the evidence in this case. While Guntharp conceded that headaches could be caused by some other trauma, he did not testify or infer that he believed Machost's injury derived from some other cause, but stated that he knew of no other injuries to her. Further, all of Simkins's arguments at trial challenging Machost's credibility related solely to the amount of pain and suffering she was entitled to and not the reasonableness of her medical bills.

██ Simkins also contends that because the verdict in this case was a general verdict, the appellate court cannot question or theorize about the jury's findings. When a jury returns a general verdict form and special interrogatories were not requested, the appellate court is left in the position of not knowing the basis for the jury's verdict, and it will not speculate nor theorize about the jury's findings. *Esry, supra.* In *Esry,* the appellant challenged the sufficiency of the evidence supporting the jury's damages award. The supreme court refused to question the jury's general verdict, but noted that substantial evidence supported the jury's decision to not award the appellant damages. The court noted that the appellant initially refused medical treatment; that although her

X-rays were normal, she scheduled an appointment with a specialist for an MRI; that her physician testified that her injury was "minimal"; that he only assumed that her injuries were attributable to the wreck because he knew of no other injuries; and that the appellee challenged the amount of damages. The court concluded that the jury could have determined, without resorting to speculation, that although the appellee was at fault, the appellant's damages were not caused by his negligence.

However, this court need not theorize or speculate about the jury's basis for its findings to determine whether substantial evidence supports the general verdict. As discussed above, substantial evidence does not support an award of $2,000 for medical expenses of $10,000 where there was testimony that all the expenses were related to Machost's normal healing process; where the treating physician testified that Machost's injuries were consistent with the diagnosis and the nature of the accident; where there was no evidence that the expenses were attributable to some other injury or circumstance; and where Simkins explicitly and repeatedly conceded to the jury both the reasonableness and necessity of the medical expenses, and in fact advised the jury that Machost's medical bills were not in dispute.

We conclude that substantial evidence does not support the jury's verdict. Accordingly, we reverse and remand for new trial.

Reversed and remanded.

HART and CRABTREE, JJ., agree.