WASTE MANAGEMENT of ARKANSAS, INC. *v.*
ROLL OFF SERVICE, INC.
and Tom Smith

CA 04-174 199 S.W.3d 91

Court of Appeals of Arkansas
Opinion delivered December 1, 2004

[Rehearing denied January 5, 2005.]

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *John E. Tull III*, *E. B. Chiles IV*, and *Brandon B. Cate*, for appellant.

*Debby Winters*, for appellees.

JOSEPHINE LINKER HART, Judge. Appellant sued appellees for intentional interference with contractual relations, violation of the Deceptive Trade Practices Act, and conversion. The jury found for appellant on all counts and awarded $350,000 in punitive damages but no compensatory damages. Thereafter, appellant asked the trial court to correct the verdict based on a juror's statement that the jury intended to award appellant both compensatory and punitive dam-

ages. The trial court refused to correct the verdict and denied appellant's alternative motion for a new trial or nominal damages. In a later order, the court denied appellant's request for attorney fees pursuant to Ark. Code Ann. § 4-88-113(f) (Repl. 2001), which is part of the Deceptive Trade Practices Act. Appellant now appeals from those rulings and argues that the trial court erred in: 1) refusing to correct the verdict; 2) refusing to grant a new trial; 3) failing to award nominal damages; 4) denying appellant's request for attorney fees. We conclude that the trial court was correct in refusing to amend the verdict but that the trial court erred in denying appellant a new trial. We therefore reverse and remand on that ground without reaching appellant's last two arguments.[1]

Since 1998, appellant has provided trash-hauling and disposal services in northwest Arkansas. It has the exclusive franchise for refuse disposal in the cities of Rogers, Lowell, and Elkins, and has private trash removal contracts with various commercial enterprises both inside and outside those cities. The written contracts entered into by appellant and its customers are for specified durations, usually thirty-six to sixty months, and most contain a liquidated-damages clause, effective in the event of early cancellation.

In 2000, appellee Roll Off Service, whose owner is appellee Tom Smith, began providing trash-hauling services in the same areas of northwest Arkansas served by appellant. Appellees immediately began pursuing customers who had contracts with appellant, including customers within the cities of Rogers, Lowell, and Elkins. When some of those customers informed appellees that they had contracts with appellant, appellees provided the customers with a cancellation letter to send to appellant. If appellant billed the customer for liquidated damages, appellees provided the customer with free service for a number of months to offset the damages.

After losing a significant number of customers to appellees, appellant filed suit in Washington County Circuit Court, seeking compensatory and punitive damages for: 1) intentional interference with contractual relations based on allegations that appellees purposely induced appellant's customers both inside and outside the exclusive franchise areas to breach their contracts with appel-

---

[1] Appellant attempted to certify this case to the supreme court, but the supreme court denied appellant's motion.

lant; 2) violation of the Deceptive Trade Practices Act (DTPA) based on allegations of false and misleading representations made to customers about the validity of the city franchises and the nature of the services that were covered by the franchises; 3) conversion based on allegations that appellees emptied appellant's containers.[2] A trial was held on these allegations from July 15-18, 2003, wherein the jury heard the testimony of over thirty witnesses and viewed hundreds of exhibits. Among the witnesses was appellant's economic expert, Dr. Charles Venus, who testified that, as the result of contracts that were prematurely terminated by over thirty of appellant's customers and as the result of appellees' servicing of more than 130 of appellant's customers in Rogers and Lowell, appellant suffered lost profits of $536,901.

After closing arguments, the jury retired for deliberations. They had been provided with twenty-four verdict forms asking them to make findings on each of appellant's claims against each appellee and to make findings regarding compensatory and punitive damages. At 1:33 a.m., the jury returned with its verdict. The verdict forms revealed that the jury had found in appellant's favor on all counts — intentional interference with contractual relations, violation of the DTPA, and conversion. However, the verdict forms pertaining to damages reflected a compensatory award of "-0-" and punitive damage awards of $150,000 against Roll Off Service and $200,000 against Tom Smith. After the jury verdict was read, the trial judge asked if either side wished to poll the jury; both sides declined.

A few days after the verdict was announced, appellees filed a motion for a judgment notwithstanding the verdict (JNOV) on the ground that the punitive-damage award could not stand in the absence of a compensatory award. Thereafter, the jury foreman, having read in the newspaper that no compensatory damages had been awarded in the case, filed an affidavit. In his affidavit, he averred that, given the extensive number of forms and the late hour that the jury had returned the verdict, there may have been confusion in completing the forms, but that the jury's intention was to award appellant $150,000 in compensatory damages against Roll Off Service and $200,000 in punitive damages against Tom Smith. Upon the filing of that affidavit, appellant moved to correct

---

[2] The City of Rogers joined appellant as a plaintiff in the lawsuit and sought an injunction prohibiting appellees from violating the city's exclusive franchise ordinance. That injunction was eventually granted by the trial court but is not at issue in this appeal.

the judgment in accordance with the jury's intention or, in the alternative, for a new trial or an award of nominal damages. The trial court struck the juror's affidavit, ruling that consideration of it was prohibited by Ark. R. Evid. 606(b), and further ruled that appellant had waived its right to correct the verdict by not doing so before the jury was discharged. Additionally, the court denied appellant's motion for a new trial or nominal damages, choosing instead to grant appellees' motion for a JNOV.

Following entry of the JNOV, appellant asked the court for $108,543 in attorney fees based on the jury's finding that appellees violated the DTPA. The trial court denied the motion, ruling that appellant was not the "prevailing party" at trial. Appellant appeals from that order and from the order denying its post-trial motions.[3]

We first address appellant's argument that the trial court erred in striking the juror's affidavit and in failing to correct the verdict. The primary basis of the court's ruling was that Rule 606(b) of the Arkansas Rules of Evidence prohibited consideration of the juror's affidavit. Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought upon any juror.

The rule embodies the public interest in preserving the confidentiality of jury deliberations, see National Bank of Commerce v. HCA Health Services of Midwest, Inc., 304 Ark. 55, 800 S.W.2d 694 (1990), and ensures that jury deliberations remain secret, unless it becomes clear that the jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence. Watkins v. Taylor Seed Farms, Inc., 295 Ark. 291, 748 S.W.2d 143 (1988).

Appellant admits that the affidavit in this case falls under neither of the rule's stated exceptions, i.e., it does not aver that the

---

[3] Appellees filed a notice of cross-appeal, but no cross-appeal was pursued.

jury was subject to extraneous prejudicial information or improper outside influence. Nevertheless, appellant argues that the affidavit was admissible because it was not contrary to the overall purpose of Rule 606(b), which is to restrict inquiry into the "validity" of a verdict. According to appellant, the juror's affidavit in this case did not address the validity of the verdict but the "veracity" of the verdict, *i.e.*, whether the jury's verdict as recorded on the verdict forms reflected the jury's decision. Appellant contends that Rule 606(b) does not prohibit a juror from testifying that the verdict inscribed on the verdict form and read in open court does not mirror what was truly agreed upon by the jury.

Appellant cites no Arkansas case in support of this proposition, and indeed there appears to be no case directly on point. However, appellant cites several cases that interpret the virtually identical Fed. R. Evid. 606(b) to say that juror testimony is permitted to show that, through inadvertence, oversight, or mistake, the verdict announced was not the verdict on which the jury agreed. *See, e.g., Karl v. Burlington N. R.R. Co.*, 880 F.2d 68 (8th Cir. 1989); *Robles v. Exxon Corp.*, 862 F.2d 1201 (5th Cir.), *cert. denied*, 490 U.S. 1051 (1989); *Attridge v. Cencorp Div. of Dover Tech. Int'l Inc.*, 836 F.2d 113 (2d Cir. 1987); *see also* Joseph McLaughlin, *Weinstein's Federal Evidence* § 606.04[4][b] (2d ed. 2004). Additionally, many state courts have interpreted their evidentiary rules in a like fashion. *See, e.g., Prendergast v. Smith Labs., Inc.*, 440 N.W.2d 880 (Iowa 1989); *Martin v. State*, 732 So. 2d 847 (Miss. 1998). These cases reason that Rule 606(b) is designed to prevent inquiry into the jurors' mental processes, not to prevent the correction of a clerical error in the transmission or recordation of the verdict. Their holdings appear to be the majority rule. *See* Annot., *Competency of Juror's Statement or Affidavit to Show That Verdict in Civil Case Was Not Correctly Recorded*, 18 A.L.R. 3d 1132 (1968).[4]

■ Appellant's argument and the cases upon which it relies are sound, if not compelling. Nevertheless, we are constrained to reject appellant's argument for several reasons. First, our courts have been very strict in interpreting Rule 606(b) to allow inquiry into a juror's thought processes only where the juror's testimony concerns extraneous information or outside

---

[4] *But cf. Chalmers v. City of Chicago*, 92 Ill. App. 3d 54, 415 N.E.2d 508 (1980), and the cases cited therein, holding that juror affidavits will not be considered to explain errors in a verdict form.

influence. *See Watkins v. Taylor Seed Farms, Inc.*, *supra; Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004); *see also* David Newbern and John Watkins, *Arkansas Civil Practice and Procedure* § 25-6 (3d ed. 2002), stating:

> Although the precise location of the line drawn by Rule 606(b) may sometimes be difficult to ascertain, the prohibition has been held applicable to a juror's thought processes in reaching a verdict and the factors that may have influenced that decision. It also covers jurors' misunderstanding of the facts or law. . . .

In light of this strict interpretation, we are reluctant to craft an exception to Rule 606(b) that goes beyond those stated in the rule itself.

▮ Secondly, one of the purposes of Rule 606(b) is to prevent juror tampering or to prevent a single juror from destroying a verdict. In *State v. Osborn*, 337 Ark. 172, 988 S.W.2d 485 (1999), our supreme court stated:

> Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath.

*Id.* at 175, 988 S.W.2d at 486-87 (quoting 75B AM. JUR. 2d, *Trial* § 1900 (1992)). In the case before us, a single juror filed an affidavit one week after the jury was discharged and attempted to explain that the jury's verdict was mistakenly recorded. Although there is no evidence that appellant procured the affidavit in this case, the possibility of improper influence or motives is certainly increased where the affidavit is filed by only one juror, one week after the verdict was rendered. We also note that, in many of the cases from other jurisdictions cited by appellant, either the entire jury panel or more than one juror filed an affidavit attesting to the mistake.

▮ Third, our recent holding in *Machost v. Simkins*, *supra*, while not directly on point, is similar enough that it may be cited for the proposition that Rule 606(b) bars juror testimony that attempts to explain a mistake in the verdict. In *Machost*, the plaintiff sought damages for injuries she suffered in an automobile accident.

Liability was admitted by the defendant, and the plaintiff unquestionably incurred $10,000 in reasonable and necessary medical expenses. The jury returned a verdict for $2,000. The next day, the plaintiff filed a motion for a new trial accompanied by a juror affidavit. The affidavit asserted that the jury had assumed that the defendant's liability for the $10,000 in medical bills had been resolved, and they therefore mistakenly awarded plaintiff only $2,000 for pain and suffering. We held that consideration of the juror affidavit would be improper because such affidavits should be considered only to show that the jury was subject to extraneous prejudicial information or an improper outside influence.

■ Finally, we believe that Arkansas law required appellant to poll the jury or otherwise attempt to correct the verdict before the jury was discharged. Our courts have adhered to an inviolate rule that corrections to a jury verdict must be made before the jury is dismissed. Arkansas Code Annotated section 16-64-119 (1987), provides:

> (a) When the jury has agreed upon its verdict, they must be conducted into court, their names called by the clerk and the verdict rendered by their foreman.
>
> (b) When the verdict is announced either party may require the jury to be polled, which is done by the clerk or court asking each juror if it is his verdict. If any one answers in the negative, the jury must again be sent out for further deliberation.
>
> (c) The verdict shall be written, signed by the foreman, and read by the court or clerk to the jury, and the inquiry made whether it is their verdict.
>
> (d)(1) If any juror disagrees, the jury must be sent out again.
>
> (2) *If no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case.*

(Emphasis added.) This statute has been cited for the proposition that a trial court should not make substantive corrections to a jury verdict after the jury has been discharged. *See Coran v. Keller*, 295 Ark. 308, 748 S.W.2d 349 (1988).

Additionally, several Arkansas cases have held that the time to correct an irregularity or inconsistency in a jury verdict is prior

to the discharge of the jury.[5] *See Spears v. Mills*, 347 Ark. 932, 69 S.W.3d 407 (2002); *Fisher v. Valco Farms*, 328 Ark. 741, 945 S.W.2d 369 (1997); *Wal-Mart Stores v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991); *Center v. Johnson*, 295 Ark. 522, 750 S.W.2d 396 (1988); *see also Barnum v. State*, 268 Ark. 141, 144, 594 S.W.2d 229, 231 (1980) (holding that a jury "may amend its verdict to conform to its finding" at any time "before they have separated and before the verdict has been entered of record and the jury discharged"). *Spears v. Mills, supra*, in particular contains several strong statements to the effect that corrections to a verdict must be made before the jury is discharged. In *Spears*, the jury was asked to determine what amount of damages the plaintiff sustained as the result of defendant's repairs; the jury answered "0." The attorneys declined to poll the jury, and the jury was discharged. Several minutes later, while the jurors were still in the courthouse, the foreman informed the bailiff that the jury may have misunderstood the damage interrogatory. The entire jury came back to the courtroom, was polled by the court, and ten members explained that the verdict read in court was not their verdict. The trial court then sent the jury out for further deliberations, and they returned with a $5,900 verdict. On appeal, our supreme court stated that "a review of this court's cases on the subject demonstrates that it has only permitted the jury to correct or amend its verdict prior to the time it is discharged." *Id.* at 939, 69 S.W.3d at 412. The court also acknowledged that there were

> conflicting interests at stake when a verdict does not reflect the true intention of the jury. On the one hand, there is the interest of the parties, as well as society in general, in having a verdict that is a true reflection of the jury's intention. On the other hand, there is the need for finality and for measures that ensure the sanctity of the jury and its deliberations. By requiring that any corrections or amendments be completed prior to the jury's discharge, this court made it clear that *the paramount consideration is that the jury be free from even the appearance of taint or outside influences.*

---

[5] Appellant contends that the jury's verdict in this case was not "irregular" or "inconsistent." We do not believe that those terms should be given too fine a definition. Certainly it is irregular or inconsistent for a jury to award punitive damages unaccompanied by a compensatory award; further, such an irregularity or inconsistency would be obvious from the face of the verdict and capable of correction before the jury was discharged.

*Id.* at 939-40, 69 S.W.3d at 412-13 (emphasis added). Finally, the court noted that it had never strayed from its holdings disallowing correction of a verdict after the jury's discharge. The court stated:

> The reason for this strict or absolute rule is to avoid even the appearance of any possible taint to the jury's verdict. Thus, even though the trial court here found that the individual jurors had not discussed the matter with anyone other than fellow jurors, the fact that the jurors had been discharged and had left the presence and control of the court gives at least the appearance that they may have been influenced by outside pressures. Indeed, the trial court acknowledged this appearance of impropriety when it refused to impose the jury's second verdict.

> In sum, neither section 16-64-119 nor this court's long-standing precedent permit the trial court to recall the jury after discharge and poll the individual jurors based on a claim that the jury misunderstood the instructions. Nor does Arkansas law allow the jury to correct or amend its verdict once it has been discharged from the case and left the presence and control of the court.

*Id.* at 941, 69 S.W.3d at 413-14.

 Our supreme court has clearly expressed its adherence to a "strict and absolute" rule that a jury's verdict may not be corrected after the jury has been discharged. Further, the court has unequivocally stated that the prevention of possible taint or undue influence on jurors supersedes a possible need to correct a verdict after the jury has been discharged.

In light of the foregoing, we conclude that Rule 606(b) prohibited consideration of the juror affidavit in this case and that the trial court was correct in refusing to amend the verdict.

We turn now to appellant's alternative argument that a new trial should have been granted. Appellant cites two cases from our supreme court in which a new trial was ordered when the jury awarded punitive damages but no compensatory damages. In *Takeya v. Didion*, 294 Ark. 611, 745 S.W.2d 614 (1988), the appellant sued the appellee for battery, and the jury awarded her $75,000 in punitive damages but no compensatory damages. The supreme court held that a new trial should have been granted because the jury "obviously" decided that the appellee was guilty of battery and that the jury "did not know that if it awarded

punitive damages without awarding compensatory damages the judgment would be set aside." *Id.* at 614, 745 S.W.2d at 616. In *Hale v. Ladd*, 308 Ark. 567, 826 S.W.2d 244 (1992), the jury returned a verdict in favor of appellant on her outrage claim against appellee and awarded her $7,500 in punitive damages but no compensatory damages. The supreme court held that a new trial should have been granted and stated:

> The jury expressly found for the plaintiff on the tort of outrage and reenforced that finding by an award of punitive damages. Thus we readily conclude, as did the jury, that the evidence supporting the claim of outrage clearly preponderates in favor of the plaintiff, Suzanne Hale. Her testimony that she sustained pecuniary as well as emotional injury attributable to the harassment was not refuted or even challenged.

*Id.* at 570, 826 S.W.2d at 246.

The case at bar contains strong similarities to *Takeya* and *Hale*. As in *Hale*, the jury expressly found in appellant's favor on each count and "reenforced" those findings by an award of punitive damages. Further, like the jury in *Takeya*, this jury obviously found appellees guilty of the charged conduct and did not know that, if it awarded punitive damages without awarding compensatory damages, the judgment could be set aside. Appellees, however, argue that this issue should be governed by *Olmstead v. Moody*, 311 Ark. 163, 842 S.W.2d 26 (1992). There, the supreme court upheld the denial of a new trial even though the jury awarded the plaintiff $27,000 in punitive damages unaccompanied by a compensatory award. However, in that case, unlike the case at bar and unlike *Hale* and *Takeya*, the jury did not find the defendant totally at fault; it found that the plaintiff and the defendant were each fifty percent negligent. Thus, *Olmstead* is readily distinguishable because the jury in that case found the parties equally at fault and, under those circumstances, the plaintiff would not have been entitled to compensatory damages.

Appellees argue further that no new trial was warranted because the evidence justified a zero compensatory verdict. The trial court was persuaded by this argument and denied the new trial on the basis that the evidence "could have supported" a finding of zero compensatory damages. In cases where a new trial is requested due to an error in the amount of recovery, the trial court must determine whether a fair-minded juror could have reasonably

fixed the award at the challenged amount. *Machost v. Simkins, supra.* When the issue appealed is primarily one of damages, the denial of a motion for a new trial will be reversed only if the trial judge's ruling was a clear and manifest abuse of discretion. *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999).

In making their argument that the evidence supported a finding of zero compensatory damages, appellees point to the following: 1) some customers who breached their contracts paid appellant liquidated damages; 2) some customers who breached their contracts did so because of appellant's poor service; 3) the calculations of appellant's economic expert, Dr. Charles Venus, were called into question by appellees' expert, Phillip Taylor. None of these points is well taken. Although some of appellant's customers paid liquidated damages, those payments amounted to considerably less than the damages testified to by Dr. Venus. Further, Dr. Venus testified that he deducted the amount of liquidated damages received by appellant when he calculated appellant's losses. In any event, on a tort claim such as intentional interference with contractual relations, a plaintiff may recover damages over and above what the breached contract contemplated. *See generally Restatement (Second) of Torts* § 774A, comment d (1979).

As for allegations of appellant's poor service, ten customers testified to various service problems with appellant. However, the jury found that appellees intentionally interfered with appellant's contracts and therefore obviously did not believe that all of appellant's customers terminated their contracts solely because of poor service. Further, the testimony of ten customers regarding bad service does not necessarily support a finding of zero damages; appellant's contracts were prematurely terminated by thirty-three companies, and appellant sustained further damage from appellees' infringement on its franchises.

Finally, while Dr. Venus's calculations were questioned by appellees' expert Phillip Taylor, Taylor did not testify that appellant sustained zero damages; he testified that he disagreed with Venus's manner of calculation and that Venus's figures were "overstated." Moreover, Taylor acknowledged that appellant's volume of business had been reduced by $100,000 to $200,000 since appellees entered the market.

■ In light of the above, we reject the notion that a fair-minded juror could have awarded no compensatory damages after having found in favor of appellant on all counts. We therefore hold that the trial court abused its discretion in denying a new trial, and we reverse and remand on that basis.

■ Appellant asks us to award a new trial on damages only. This we cannot do. Even though the errors in this case pertain only to damages, a new trial must include both liability and damages issues. *See Smith v. Walt Bennett Ford*, 314 Ark. 591, 864 S.W.2d 817 (1993). Appellant acknowledges this authority but asks us to overrule it. However, the court of appeals may not overrule decisions made by the supreme court. *See Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 129 S.W.3d 324 (2003). Therefore, a new trial is awarded as to both liability and damages.

In light of our remand for a new trial, we do not find it necessary to address appellant's remaining issues regarding nominal damages and attorney fees. The complexion of these issues will very likely change depending upon the findings made and the damages awarded, if any, following a new trial. Therefore, any opinion we offer on these issues now would be purely advisory, and our appellate courts do not issue advisory opinions. *See Allison v. Lee County Election Comm'n*, 359 Ark. 388, 198 S.W.3d 113 (2004).

Reversed and remanded.

PITTMAN and VAUGHT, JJ., agree.