
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-26

| | | |
|---|---|---|
| | | **Opinion Delivered** September 24, 2014 |
| ROSEANNA FORT | | APPEAL FROM THE WASHINGTON |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [No. DR-12-1355] |
| V. | | |
| | | HONORABLE CRISTI R. BEAUMONT, |
| THE ESTATE OF NORMA MILLER, | | JUDGE |
| DECEASED | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

After appellant Roseanna Fort obtained a $5,044.43 jury verdict in her negligence claim against appellee, the Estate of Norma Miller, deceased,[1] she moved for a new trial. She argued that pursuant to Arkansas Rule of Civil Procedure 59(a), the verdict was clearly against the preponderance of the evidence and the jury erred in assessing the amount of her recovery. She also argued that the trial court erred as a matter of law in amending/modifying the jury's verdict. The motion was denied by the Washington County Circuit Court, and Fort appealed. We affirm.

The motor-vehicle accident giving rise to this appeal occurred on February 17, 2011.

---

[1]The record reflects that Miller passed away just a few days after Fort filed her complaint. The trial court later entered an order granting Fort's petition to appoint a special administrator of Miller's estate, and the special administrator was served with Fort's complaint. For purposes of this opinion, we will refer to the appellee as Miller.

Fort was traveling east on Highway 412 in Huntsville, Arkansas, and collided with a vehicle, driven by Miller, that made a left turn into Fort's vehicle. Fort filed a complaint against Miller, alleging negligence and seeking damages for past, present, and future medical expenses; pain and suffering; and loss of income.[2]

At the onset of trial, the court advised the jury that Miller admitted liability and that the case would be submitted on the issue of damages only. Fort proceeded to testify that immediately after the collision, her right knee and wrists hurt. She sought medical treatment that day and was treated for pain in her neck, right wrist, knee, and arm. All tests were normal, and she was diagnosed with cervical strain, lumbar strain, right-wrist sprain, and a right-knee contusion and told to follow up with her family physician.

Fort testified that two weeks later, she sought medical treatment from family-care physician Dr. Robert Wilson. She complained of right-shoulder pain to Dr. Wilson, and he suggested that she see an orthopedic specialist. On March 10, 2011, Fort saw orthopedic surgeon Dr. Terry Sites for right-shoulder pain. According to Fort, she was treated by Dr. Sites on nine occasions between March 10, 2011, and December 20, 2012, and received testing, injections, prescription medication, and physical therapy for her shoulder. Although she had episodes of improvement, Fort stated that she continued to suffer from pain in her shoulder, and ultimately, Dr. Sites recommended arthroscopic surgery. According to Fort, she declined surgery twice—once because she wanted to pursue additional conservative treatment and another time

---

[2]The loss-of-income claim was later withdrawn by Fort.

due to the expense.[3] Fort asked the jury for reimbursement for her medical expenses that she claimed were caused by the accident, which totaled $10,995.92. And because she continued to suffer from right-shoulder pain, she asked the jury to award her damages for surgery.

Dr. Sites's testimony and his medical records reveal that on his first visit with Fort in March 2011, she complained of pain in her right shoulder and both wrists. He noted that while her shoulder was tender, she had full range of motion. A right-shoulder x-ray did not reveal fractures or dislocations but did reveal a type II acromion, a congenital condition unrelated to the accident. Dr. Sites diagnosed Fort with rotator-cuff tendinopathy with impingement, mild AC joint sprain and periscapular strain and recommended conservative treatment. Fort returned to Dr. Sites on May 9, 2011, reporting pain, and he recommended an MRI.

The MRI was performed July 26, 2011, and the radiologist, Dr. Jennifer Taylor, found that "a hint of subacromial fluid [was] seen which could be related to tendinosis but a definite rotator cuff tear is not appreciated." She also found "mild hypertrophic changes involving the acromioclavicaular joint causing some mild impingement of the myotendinous junction of the supraspinatus." On July 28, 2011, Dr. Sites interpreted the MRI films, finding that there was no complete tear of the rotator cuff but some evidence of thinning that could represent a partial tear and/or tendonitis. He also found that there was AC joint arthropathy with inferior spurs that were causing some impingement on the rotator cuff. He said that he did not know if Fort had the spurs prior to the accident. Because Fort did not have a complete tear, he recommended further conservative treatment.

---

[3]Evidence introduced at trial established that the estimated cost of arthroscopic surgery was $34,790.77.

SLIP OPINION

Fort returned August 25, 2011, and reported that while she had some pain reaching backward, her "right shoulder [felt] fantastic following [an] injection and some therapy." She had full range of motion and no impingement. However, on October 20, 2011, Fort returned with complaints of pain. She had full range of motion but positive impingement near the acromion. Dr. Sites testified that he recommended arthroscopic surgery; however, Fort requested additional therapy. Dr. Sites testified that Fort returned on November 3, 2011, and December 8, 2011, with continued complaints of pain, but stated that she was making good progress. On January 19, 2012, Dr. Sites reported that Fort was continuing to experience pain. Because conservative measures failed, he again recommended arthroscopic surgery. Fort did not schedule it. Dr. Sites did not see Fort again until December 20, 2012, at which time he noted that Fort was still not ready for surgery. He denied her request for oxycodone, offering her another cortisone injection instead, which she declined. He wrote her a prescription for a mild pain pill and told her to return should she decide to proceed with the arthroscopy. Fort had no more doctor visits.

Dr. Sites testified that within a reasonable degree of medical certainty Fort's motor-vehicle accident caused an injury to her rotator cuff/AC joint, which was responsible for her pain. He further opined that the recommended arthroscopy was related to the injury she sustained in the accident. He acknowledged that the radiologist who interpreted the MRI did not see a rotator-cuff tear. He said that he did not see a tear either, but that she could have a partial tear or tendonitis, while conceding that tendonitis was a degenerative condition. He also acknowledged that neither a partial tear nor tendonitis were revealed on the MRI; however, he said that he does not perform surgery based solely on MRI results—"we treat people, we don't treat tests."

4

SLIP OPINION

The final witness at trial was Dr. David McAlister, a diagnostic radiologist hired by Miller. He testified that he did not examine Fort, but he reviewed her medical records. Dr. McAlister said that he agreed with Dr. Turner's interpretation of the MRI—there was no full or partially torn rotator cuff. He opined that Fort's MRI was a normal for a person her age (fifty five at the time of trial). He concluded that the MRI did not show any injury of any kind to Fort's shoulder as a result of the motor-vehicle accident.

The jury returned a $5,044.43 verdict for Fort: $3,544.43 for the nature, extent, and duration of her injury; $1,500 for pain, suffering, and mental anguish in the past, present, and/or future; and $0 for past and future medical expenses. Fort's Rule 59(a) motion for new trial was denied by the trial court. Fort timely appealed.

Ark. R. Civ. P. 59(a)(6)

When a motion for new trial is made pursuant to Rule 59(a)(6)—that the verdict was clearly against the preponderance of the evidence—is denied by the trial court, this court will affirm if there is substantial evidence to support the verdict. *Depew v. Jackson*, 330 Ark. 733, 735–36, 957 S.W.2d 177, 178 (1997). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty. *Id.* at 736, 957 S.W.2d at 178. The evidence must force the mind to pass beyond suspicion or conjecture. *Id.*, 957 S.W.2d at 178. In examining whether substantial evidence exists, the verdict is given "the benefit of all reasonable inferences permissible in accordance with the proof." *Id.*, 957 S.W.2d at 178.

Fort argues that the jury's verdict is clearly contrary to the preponderance of the evidence because there is a lack of substantial evidence supporting the zero-damage award for medical expenses. She contends that liability was admitted and the only evidence regarding causation showed that her injuries were caused by the accident. Fort cites Dr. Sites's opinion that her injuries were caused by the collision. She also contends that there was no evidence that any preexisting condition, including a type II acromion, could have caused her shoulder injuries. Finally, she points out that Miller made no attempt to dispute the cause of Fort's other injuries to her wrists, knee, and neck.

For support, Fort cites *Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004). There, Machost and Simkins were involved in a motor-vehicle accident, Simkins admitted liability, and the case was tried to the jury on damages. Despite medical bills of $10,000, the jury returned a verdict of $2,000. Machost moved for new trial, arguing that the jury's verdict was clearly against the preponderance of the evidence; the trial court denied the motion. *Id.* at 52, 158 S.W.3d at 729. On appeal, our court reversed, holding that substantial evidence did not support the trial court's denial where there was medical evidence connecting Machost's injuries to the accident *and* Simkins's attorney conceded on several occasions during trial that Machost's medical expenses were reasonable and necessary and that Simkins was responsible for them. *Id.* at 56–57, 158 S.W.3d at 732.

*Machost* is clearly distinguishable from the case at bar. At no time did Miller concede that Fort's medical expenses for her shoulder were reasonable and necessary or that Miller was responsible for them. To the contrary, these were disputed issues throughout the trial.

6

The case at bar is more similar to *Depew*. There, Depew was struck from behind by Jackson, who admitted liability. The case was submitted to the jury on the issue of damages only, and Depew presented evidence of medical and surgical bills totaling over $15,000. The jury returned a $1,600 verdict, and Depew moved for a new trial pursuant to Rule 59(a)(6), arguing that the verdict was clearly against the preponderance of the evidence; it was deemed denied. *Depew*, 330 Ark. at 735, 957 S.W.2d at 178. The supreme court affirmed the trial court's denial pursuant to Rule 59(a)(6), holding that substantial evidence supported the jury's verdict because there was evidence that the surgery and treatment of Depew's condition was not proximately caused by Jackson's negligence, but was instead due to a preexisting condition. *Id.* at 739–40, 957 S.W.2d at 180–81. Therefore, the award of only $1,600 was not clearly against the preponderance of the evidence. *Id.* at 740, 957 S.W.2d at 181.

In the instant case, there is some evidence in the record (Fort's and Dr. Sites's testimony) that Fort's shoulder complaints were caused by the motor-vehicle accident. However, there is also *substantial* evidence in the record from which the jury could have concluded that Fort was not seriously injured in the accident, that her shoulder complaints and medical treatment for those complaints were not proximately caused by the accident, and/or that the medical treatment was not reasonable and necessary.

Fort testified that after the accident no ambulance came to the scene and her airbags did not deploy. She said that she suffered no cuts or broken bones; the injuries that she reported on the day of the accident (wrists, neck, and knee) healed; and she did not report any right-shoulder pain on the day of the accident and did not receive any treatment that day for her shoulder. She

added that she was able to work in the weeks following the accident, and she did not seek medical treatment for right-shoulder complaints until two weeks later. Fort did not seek any medical treatment or fill prescriptions for her shoulder between January 2012 and December 2012. During her last visit with Dr. Sites in December 2012, she declined an injection and she did not fill the prescription he gave her for a mild pain pill. She did not seek any medical treatment or fill prescriptions for her shoulder in 2013. She did not schedule shoulder surgery.

Furthermore, the medical evidence demonstrated that all objective testing, including the MRI, failed to show an acute injury. Two physicians opined that the MRI did not show a rotator-cuff tear. Instead, the MRI revealed arthritic spurring that caused impingement on the rotator cuff, and Dr. Sites could not state that the spurring was caused by the accident. And while he opined that Fort may have suffered from a partial tear and/or tendonitis, Dr. Sites conceded that these conditions were not demonstrated on the MRI. Drs. Turner and McAlister opined that there was no partial tear. Finally, there was evidence of preexisting conditions. Dr. Sites testified that tendonitis was a degenerative condition and that Fort suffered from a congenital condition, a type II acromion, which he said could cause impingement.

Based on this evidence, it was reasonable for the jury to conclude that Fort did not injure her right shoulder in the accident, that her complaints were due to congenital conditions or preexisting degenerative conditions, and/or that her medical expenses were not proximately caused by the accident. The jury did not have to resort to conjecture or speculation to arrive at its verdict. This is especially true considering that we are to give the verdict "the benefit of all reasonable inferences permissible in accordance with the proof." *Depew*, 330 Ark. at 739–40, 957

S.W.2d at 180–81. Because substantial evidence supports the verdict, we cannot say that the trial court erred in denying Fort's motion for new trial on the ground that the verdict was clearly against the preponderance of the evidence.

Ark. R. Civ. P. 59(a)(5)

Generally, where the primary issue on appeal is the alleged inadequacy of the jury's award pursuant to Arkansas Rule Civil Procedure 59(a)(5), this court will affirm the denial of a motion for new trial absent a clear and manifest abuse of discretion. *Depew*, 330 Ark. at 740, 957 S.W.2d at 181. "An important issue is whether a fair-minded jury could have reasonably fixed the award at the challenged amount." *Id.*, 957 S.W.2d at 181 (citations omitted). Fort argues that no fair-minded jury could have found that Fort was injured as a result of the accident, yet award her nothing in medical expenses. We disagree.

Throughout the trial, Miller's theory of the case was that Fort did not suffer injuries to the extent that she claimed; more specifically, that her shoulder problems (which made up the bulk of her medical expenses) were not proximately caused by the accident. It is clear that the jury accepted this theory, and it declined to award Fort damages for her medical bills. As more fully discussed in the prior point, there was substantial evidence from which a fair-minded jury could have reached this decision.

Furthermore, the mere fact that a plaintiff has incurred medical expenses and the defendant has admitted liability does not automatically translate into a damage award equivalent to those expenses. *Id.* at 740, 957 S.W.2d at 181 (citing *Kratzke v. Nestle-Beich, Inc.*, 307 Ark. 158, 817 S.W.2d 889 (1991)). It is entirely possible that the jury, in awarding Fort $5,044.43, believed

9

she suffered some injuries as a result of the accident but not to the extent she claimed at trial.

Based on the foregoing, we cannot say that the trial court clearly and manifestly abused its

discretion in denying Fort's motion for new trial on the ground that the jury erred in the

assessment of the amount of recovery.

## Amended/Modified Jury Verdict

Fort's final issue on appeal involves findings made by the trial court in its order denying

the motion for new trial. In that order, the trial court stated that

> [a]lthough there was testimony at the trial that the shoulder pain was related to the car accident, the jury is not required to believe the testimony. It is the duty of the trier of fact to weigh the evidence and assess the credibility of the witness. Here, the jurors awarded compensatory damages of $3,544.43—an amount equal to the cost of the plaintiff's medical expenses through March 14, 2011. They clearly concluded that the plaintiff's shoulder injury was unrelated to the accident and declined to compensate the plaintiff for treatment to her shoulder.

Fort contends that these findings in the trial court's order amended/modified the jury verdict,

effectively "reclassifying the jury's award for nature, extent, and duration of the injury as [an

award] for medical-care damages." Fort argues that this is error as a matter of law because our

supreme court has clearly expressed its adherence to a "strict and absolute" rule that a jury's

verdict may not be corrected after the jury has been discharged. *Waste Mgmt. of Ark., Inc. v. Roll

Off Serv., Inc.*, 88 Ark. App. 343, 354, 199 S.W.3d 91, 97–98 (2004).

We reject Fort's argument. The trial court did not amend/modify the judgment. The

judgment, which includes the jury verdict as rendered, still stands. The trial court's findings were

merely its summary of the evidence supporting the jury's verdict. Further, there is nothing in the

record to indicate that the trial court, Miller, or the jury believed that the jury made a mistake and

an amendment was necessary. Only Fort believes the jury made a mistake; however, after the verdict was read, she did not poll the jury, lodge an objection, or otherwise attempt to correct the perceived mistake before the jury was discharged.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Greg Thurman*; and *Nick Churchill*, for appellant.

*Roy, Lambert, Lovelace, Bingaman & Wood, LLP*, by: *Jerry L. Lovelace* and *James H. Bingaman*, for appellee.