WARD BODY WORKS, INC. *v.* SMALLWOOD.

5-1169                                              298 S. W. 2d 332

Opinion delivered February 11, 1957.

*Huie* and *Huie,* for appellant.

*Lookadoo, Gooch & Lookadoo,* for appellee.

CARLETON HARRIS, Chief Justice. This case arose out of a traffic mishap which occurred a short distance south of Arkadelphia, on highway 67. Appellant, W. E. Bolding, was driving south on said highway delivering a new school bus to a customer of Ward Body Works. He attempted to pass appellee, Cecil R. Smallwood, who was also proceeding south in a tractor belonging to him, and to which was attached a trailer, belonging to United Transport, loaded with new automobiles. While he (Bolding) was in the process of passing, a car came over the hill from the opposite direction, moving rapidly, and appellant, thinking he was clear of appellee, pulled back into the right lane. The right rear corner of the school bus collided with the left front of Smallwood's tractor, which overturned. Smallwood filed this action against Bolding and Ward Body Works to recover for property damage and physical injuries.

At the trial, appellee contended that Bolding cut in too quickly, while appellants contended that appellee should have decreased his speed when the approaching car was observed, in order to permit Bolding to completely pass the tractor. The jury found that Bolding was guilty of negligence, and that the total amount of damages sustained by appellee was $12,000 personal injury and $1,500 property damage. The jury also found appellee guilty of negligence, and further found that the total negligence causing the collision should be prorated 75% to Bolding and 25% to Smallwood.[1] This resulted in a judgment for Smallwood in the amount of $9,000 for personal injuries and $1,125 property damage, or a total of $10,125. From such judgment comes this appeal, the sole point raised by appellants being that the verdict of the jury was excessive. Appellee cross appeals, contending that there was no evidence that Small-

---

[1] See Act 191 of 1955.

wood was guilty of any negligence at all, and he should have the full amount of recovery.

First, we dispose of the cross appeal. Appellee insists there is no evidence of negligence on his part, and that the jury was in error in making this finding. It is true that the only direct evidence as to negligence of appellee was presented in the testimony of Bolding, who stated as they started down the hill (at which time he was endeavoring to pass appellee) the tractor picked up speed, and that if Smallwood had slowed the tractor down, appellant would have been able to clear the vehicle before cutting back in. Other evidence also indicated that Bolding may well have been trying to pass appellee for a distance of about four-tenths of a mile. We think the testimony of Bolding was sufficient to raise a jury question, and it was within the province of the jury to determine whether or not appellee was guilty of negligence. Accordingly, we hold there is no merit in the cross appeal.

We come then to the claim that the verdict is excessive. Appellee contends that the cervical part of his spine has been injured; that it causes pain when he turns his head; that he has extreme pain in the lower part of his back, and that at times when driving, he takes trembling spells which almost cause him to black out. He testified that he formerly worked a 70 hour week, but that he is presently not able to put in more than 60 to 65 hours, which extend over the entire week (instead of concluding in five days, six hours), and instead of taking an eight hour rest period, it has become necessary to rest from 10 to 14 hours before resuming his duties. He also complains of extreme nervousness; states that he has to frequently stop and rest on his trips, and that he has undergone much mental pain and worry through fear that he will not be able to continue in his work, and, accordingly, not be able to support his family. The record discloses that he spent one day in the hospital immediately following the collision, lost 35 days from work, and has visited several physicians for examination or for treatment.

Two physicians, Dr. Richard M. Logue, orthopedic surgeon of Little Rock, and Dr. R. E. Rowland of Pineville, Louisiana, testified for appellee. Dr. Logue stated that he saw the patient three times, first in October, and last on March 26th, 1956. He found tenderness over the mid-portion of the neck, particularly on the right, and x-rays revealed a narrowing of the interspace between the fifty and sixth vertebrae. This, according to Dr. Logue, indicated an injury at some prior time, said injury causing this narrowing because of damage to the intervertebral disc space. It was his opinion that this narrowing could have been caused by the injury received by appellee on July 28th.[2] He stated that pain is a natural accompaniment of such an injury. "With the complaints that Mr. Smallwood exhibits and in spite of the dearth of physical findings, it is my feeling in cases such as these, that pain arises from the strains associated with the accommodation of the body to the narrowing of the space and this in turn produces tensions in the neck which can result in his headaches. Because of my experience in seeing a number of these injuries, and in many without even x-ray evidence present, I feel that it is accepted among orthopedists that such injuries do cause some degree of permanent disability. In Mr. Smallwood's case I feel this does not exceed 10% to the body as a whole." Dr. R. E. Rowland examined appellee on October 15th, 1955, and this examination was entirely neurological and psychiatric. From his testimony; "Neurological examination: he had a decided facial tremor; in other words, he was shaking and nervous — tremors on both sides. The fold — the nasal laval fold — running from his cheek to the corner of his mouth on the right side is exaggerated; tremor of lips, tremor of tongue on extension; tremor of fingers on extension — his hands were shaking — both upper extremities showed slight increased motor activity on reflexes, more pronounced on the right; slight exaggerated reflex of patellae; left achilles exaggerated; tremor of the voice; missed finger to nose test; positive Rhom-

[2] The collision which is the subject of this litigation occurred on July 28, 1955.

berg.'' Dr. Rowland related the patient was suffering from traumatic neurosis, was very nervous, and in his opinion, the nervous condition resulted from the wreck on July 28th. He also examined appellee April 22, 1956 (one day before the trial). His testimony relative to such examination was that he considered the patient disabled at that time because of high tension, that Smallwood was extremely nervous, and he did not know how long this condition would exist, but ''the nervous tissue is the highest tissue we have in the body, and the last to repair itself.'' He considered the patient disqualified vocationally, *e. g.,* that he would be unable to use good judgment and would become frustrated; that the dizzy spells and blackouts would certainly disqualify him from driving, and that Smallwood needed rehabilitation or revocationing because ''those black-spells are certainly serious.''

Dr. Kenneth Jones, orthopedic surgeon of Little Rock, Dr. Robert Watson, practicing neurological surgeon of Little Rock, and Dr. Andrew Crenshaw, orthopedic surgeon of Campbell's Clinic, Memphis, Tennessee, all testified on behalf of appellant. Dr. Watson saw the patient on January 6th, 1956, and testified he found no physical evidences to prohibit appellee from returning to work, and was of the opinion that there were no indications for further medical treatment. Dr. Jones found no evidence of physical injury, but in his report stated the patient ''appeared to be emotionally unstable and might well be suffering from a traumatic neurosis.'' Dr. Crenshaw (whom Smallwood first visited for treatment by his own choice) first treated appellee in August, 1955. He testified that his examination revealed tenderness over the mid-portion of the neck, and restriction of neck motion 50 to 75% normal. Examination of the back proved negative except for the fact that pressure over the right 10th and 11th ribs posteriorly (behind) caused a clicking sensation in the right lower front part of the chest, which caused the patient to jump with pain. Appellee complained that this was the type of pain he had in his back while driving the truck, and that it usually came when he hit a bump in the road.

Dr. Crenshaw also found a narrowing of the disc space between the fifth and sixth cervical vertebrae (bones in the neck). He advised staying away from work for two weeks and the use of hot packs. Dr. Crenshaw again saw appellee during the latter part of September, at which time most of the neck discomfort had disappeared, and also most of the back discomfort. Examination of patient's back still revealed the clicking sensation in the ribs (previously described) in front, when pressure was applied from behind. It was the opinion of Dr. Crenshaw that appellee would eventually be completely free of the symptoms, though this might not occur for more than a year. He stated that the patient would be able to work, although he would have discomfort. The doctor did not know how long a truck trip appellee might be able to make in comparison to previous truck trips.

Appellants further contend that with the exception of the months of August, September, and November, appellee's earnings have been higher than before the wreck. This is true with the exception of January, 1956, but appellee states that his base pay had been raised about 3c a mile subsequent to the accident.

As stated in *East Texas Motor Freight Lines, Inc.* v. *Buck,* 213 Ark. 640, 212 S. W. 2d 13, ''It is not the province of the appellate court—in considering whether a verdict is excessive — to determine as between the credibility of the various sets of medical experts. On appeal we are required to give the evidence supporting the verdict its highest probative value. * * * So, here, we must take the substantial evidence showing the greatest amount of injuries, and then, — based on such injuries — determine whether the verdict is excessive.'' The case of *Golenternek* v. *Kurth,* 213 Ark. 643, 212 S. W. 2d 14, 3 A. L. R. 2d 593, quotes with approval the earlier language of Mr. Justice KIRBY in *St. L. S. W. Ry. Co.* v. *Kendall,* 114 Ark. 224, 169 S. W. 822. ''There is no market where pain and suffering are bought and sold or any standard by which compensation for it can be definitely ascertained and the amount actually endured determined, and compensation therefor must be consid-

ered on a reasonable basis, and the jury cannot give any amount they please, although the amount of damages must be left largely to the reasonable discretion of the jury." * * * Applying the standard as herein set out, we are of the opinion that the verdict awarded appellee for personal injuries was excessive, and should be reduced to $9,000.

Appellants also contend that the judgment for damage to the tractor was excessive by about $400. William Earl Smith, a witness for appellant, testified that the tractor could be repaired for $795.76. He did not profess to know the market value of the tractor before the wreck occurred. Appellee testified the fair market value of the tractor to be $2,000 before the wreck, and the fair market value afterwards to be $300. W. O. Duce, automobile dealer in Arkadelphia, testified that he was familiar with appellee's tractor (in fact, he had seen it the day before the wreck) and a fair market price for the tractor would be from $1,850 to $2,100; that he would estimate the value of same after the wreck at $300 to $400. On cross-examination, he reduced this figure to some extent, but we are of the opinion that the evidence was sufficient to justify the judgment of the jury for $1,500 property damage.

Summarizing, the jury awarded Smallwood $12,000 personal injuries, and $1,500 for property damage. We feel that the judgment for $12,000 is excessive, and should be reduced to $9,000. The jury also found Smallwood guilty of negligence, and that such negligence should be prorated 75% to appellant and 25% to appellee. Accordingly, under the reduction herein ordered, and after prorating the negligence as found by the jury, appellee is entitled to personal damages in the amount of $6,750, property damage in the amount of $1,125, or a total judgment of $7,875.

CONCLUSION: If, within fifteen juridical days, a remittitur be entered in keeping with this opinion, then the judgments will be affirmed as so reduced. If such

remittitur be not entered, the judgments will be reversed and the cause remanded.

Justices WARD and ROBINSON think the case should be affirmed in all respects.