BREITENBERG v. PARKER.

5-3114

372 S. W. 2d 828

Opinion delivered November 26, 1963.

*Wootton, Land & Matthews,* for appellant.

*Fred E. Briner* and *Holt, Park & Holt,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation results from a traffic mishap in which appellee, E. R. Parker, sustained physical injuries and property damages. On April 6, 1961, Mr. Parker, accompanied by two companions, was driving his car in a heavy line of traffic in Hot Springs, and E. J. Breitenberg was driving his car immediately behind the Parker vehicle. The car in front of Parker stopped suddenly; Parker stopped suddenly; Breitenberg's car struck the rear of the Parker car, damaging the vehicle and inflicting a whiplash injury on Parker; and this litigation resulted. The jury awarded Parker a verdict of $20,000.00; and Breitenberg appealed,[1] claiming three points:

"1. The Appellee Parker improperly asked a question about the issuance of a traffic ticket to the Appellant Breitenberg and to Appellant Breitenberg's prejudice.

"2. The Trial Court erred in failing to grant Appellant's Motion for a New Trial on the basis that the jury did not have time to consider the evidence.

"3. The verdict of the jury was excessive."

I. *Improper Question.* When Mr. Parker was testifying the following occurred:

"Q. Now when you left the scene—Do you know whether the city policeman gave Mr. Breitenberg a ticket or not?

"A. I didn't see it.

---

[1] While the cause was pending in this Court on appeal the death of E. J. Breitenberg was reported to this Court; and on motion of appellant the cause was revived and Jacob L. King, as executor of the estate of E. J. Breitenberg, was substituted as appellant; but we style the case as it was styled when first filed in this Court.

"MR. WOOTTEN: Your Honor, we object to any such question as that.

THE COURT: Sustained. The jury will disregard the question even though it was answered in the form that it was."

Appellant says that the question about whether Breitenberg received a ticket for traffic violation was improper under Ark. Stat. Ann. § 75-1011 (Repl. 1957), and requires a reversal under such cases as *Garver* v. *Utyesonich*, 235 Ark. 33, 356 S. W. 2d 744; *Harbor* v. *Campbell*, 235 Ark. 492, 360 S. W. 2d 758; and *Girard* v. *Kuklinski*, 235 Ark. 337, 360 S. W. 2d 115. We agree that the propounded question was improper; but the Trial Court promptly admonished the jury to disregard the question and the answer. The appellant seemed satisfied with the Court's ruling, and neither moved for a mistrial nor made any other evidence of disagreement with the ruling. In these circumstances, we hold that any prejudice arising from the question was removed by the ruling of the Trial Court. See *Horton* v. *Smith*, 219 Ark. 918, 245 S. W. 2d 386.

II. *Brief Time That The Jury Deliberated.* The trial of this cause began on October 25th, and the verdict was returned on October 26th. On November 8, 1962, Breitenberg filed a motion for new trial, supported by the affidavit[2] of counsel to the effect that less than fifteen minutes transpired from the time the jury left the

---

[2] The pertinent portion of said affidavit reads as follows: "That from the time the jury left the jury box until it returned to the court room to announce its verdict, a total of some minute or two less than fifteen minutes was consumed. That a foreman was elected by the jury, as evidenced by the jury verdict and that a minute or two must have elapsed to allow the jury to leave the box and get to the jury room and a comparable amount of time for the jury to return from the jury room to the court room. That at the time it was announced by the bailiff that the jury had reached a verdict and wanted to return, that two to three minutes was consumed in getting all of the court attaches together and back in the court room and following this time, the jury returned. That there was less than ten minutes time in which the jury had to elect a foreman, discuss the evidence, vote and arrive at a verdict, and therefore improper consideration to the evidence and law was given. That this affidavit is made in support of the defendant's motion to set aside the jury verdict and to render a new trial in the cause."

box to consider its verdict until the time the jury returned to announce the verdict; and the appellant urges that this was too short a time to allow the jury to deliberate. When the jury came in with the verdict the appellant knew at that time how long the jury had been out, yet did not ask that the jury be sent back to reconsider the verdict or make any objection to the brevity of jury consideration until November 8th, which was long after the trial. If there had been any objection to be registered, it should have been registered before the jury was allowed to separate.

We find no merit to this point urged by appellant. We have no statute in Arkansas which prescribes a length of time that a jury should consider its verdict; but the general rule from the vast number of cases on the point is well stated in 89 C.J.S. p. 93, "Trial" § 462c:

"While the verdict should be the result of sound judgment, dispassionate consideration, and conscientious reflection, and the jury should, if necessary, deliberate patiently and long on the issues which have been submitted to them, where the law does not positively prescribe the length of time a jury shall consider their verdict, they may render a valid verdict . . . on very brief deliberation after retiring, especially where the evidence is not complicated, or the facts are clearly drawn. The trial court may at its discretion, cause the jury to reconsider the case if their decision is so hasty as to indicate a flippant disregard of their duties."

Appellant's counsel cite us to no Arkansas case involving this question of speed of deliberation of the jury, and our search has failed to disclose any such case; but there are many cases from other jurisdictions, all to the effect that the losing party has no ground for a new trial on the basis that the jury verdict was reached in a very short time. Some such cases are: *Beach* v. *Commonwealth* (Ky.), 246 S. W. 2d 587; *O'Connell* v. *Ford* (R. I.), 191 A. 501; *Urquhart* v. *Durham* (N. C.), 72 S. E. 630; *Carrara* v. *Noonan* (R. I.), 31 A. 2d 424; *Patillo* v. *Thompson* (Ga. App.), 128 S. E. 2d 656; *Gaskill* v. *Cook* (Mo.), 315 S. W. 2d 747; and *Rustigian* v. *Molloy* (R. I.),

186 A. 2d 724. We like the language of the Kentucky Court in *Beach* v. *Commonwealth, supra:*

"The fact that the jury returned a verdict in about eight minutes after having the case submitted to them does not indicate to us that Beach did not receive a fair trial when the issues of fact were so clearly drawn. It is true that a verdict should be the result of dispassionate consideration and the jury, if necessary, should deliberate patiently until they reach a proper conclusion concerning the issues submitted to them. Yet where the law does not positively prescribe the length of time a jury shall spend in deliberation, the courts will not apply an arbitrary rule based upon the limits of time."

III. *Excessiveness Of The Verdict.* Finally, appellant urges that the verdict of $20,000.00 is grossly excessive and we are cited to a number of our cases wherein verdicts have been reduced, some of which are: *Coca-Cola Bottling Co.* v. *Shipp,* 174 Ark. 130, 297 S. W. 856; *Oviatt* v. *Garretson,* 205 Ark. 792, 171 S. W. 2d 287; *So. Natl. Ins. Co.* v. *Williams,* 224 Ark. 938, 277 S. W. 2d 487; and *Ward Body Works* v. *Smallwood,* 227 Ark. 314, 298 S. W. 2d 332. The rule, as to the province of this Court in regard to reducing verdicts, is well stated in *Ark. Amusement Corp.* v. *Ward,* 204 Ark. 130, 161 S. W. 2d 178:

"A verdict will be set aside by an appellate court as excessive where there is no evidence on which the amount allowed could properly have been awarded; where the verdict must of necessity be for a smaller sum than that awarded; where the testimony most favorable to the successful party will not sustain the inference of fact on which the damages are estimated; where the amount awarded is so excessive as to lead to the conclusion that the verdict was the result of passion, prejudice * * * or of some error or mistake of principle, or to warrant conclusion that the jury were not governed by the evidence * * *."

Every case involving the issue of excessiveness must be examined on its own facts; and before this Court can

constitutionally reduce a verdict we must give the evidence in favor of the verdict its highest probative force and then determine whether there is any substantial evidence to sustain the verdict. That Mr. Parker received a whiplash injury in the collision is thoroughly established: there was testimony that the Parker car was entirely stopped; that Breitenberg's car struck the Parker car with sufficient force to drive it fifteen feet forward and into the rear of the preceding car; that when Mr. Parker emerged from his car he was holding his head; that the investigating officer found Mr. Parker in such condition that he advised one of the other occupants of the Parker car to drive Mr. Parker to his home in Benton; and that this was done.

Mr. Parker was a well, active man, 63 years of age, before receiving his injuries. That he suffered tremendously from the injuries received in April 1961 until the time of the trial in October 1962 is thoroughly established: he has consulted numerous doctors, taken various kinds of pain easing medicines, worn a neck brace, and spent considerable amounts visiting clinics in Memphis and New Orleans for treatment of his whiplash injury; and he was still receiving treatment at the time of the trial. Dr. Walter Carruthers testified that he had been treating Mr. Parker for many months: that Mr. Parker had **suffered excruciating** pain; that x-rays revealed that prior to the whiplash Mr. Parker had some arthritic degeneration of the joint spaces between the fifth and sixth cervical vertebrae, common to men of Mr. Parker's age, even though such condition was unknown to Mr. Parker and had never caused him any pain or inconvenience; that a whiplash injury is a snapping of the neck when a person gets his head thrown forward and back or from side to side; that as a result of the whiplash injury Mr. Parker is disabled permanently and to at least 25%. Dr. Thompson, called by appellants, testified that a whiplash injury can produce pain in a previously non-symptomatic case; that prior to receiving the whiplash injury Mr. Parker had a degenerative disk condition between the fifth and sixth cervical vertebrae;

that the whiplash aggravated that condition and caused pain; and that because of the whiplash injury Mr. Parker would have some permanent aggravation of his pre-existing condition.

There is evidence in the record concerning the damages to Mr. Parker's car, and also concerning the expenses he has incurred in being treated for his injury; but we have detailed sufficient of the evidence to demonstrate that we cannot say that the verdict is so grossly excessive as to require a remittitur.

Affirmed.

HOLT, J., not participating.