D.B.&J. HOLDEN FARMS LIMITED PARTNERSHIP, Brouce Holden, Jr., Trust and James R. Holden Trust *v.* ARKANSAS STATE HIGHWAY COMMISSION

CA 05-316 218 S.W.3d 355

Court of Appeals of Arkansas
Opinion delivered November 30, 2005

[Rehearing denied January 4, 2006.]

*Timothy F. Watson*, for appellants.

*Robert L. Wilson*, Chief Counsel, and *William L. Wharton*, for appellee.

JOHN MAUZY PITTMAN, Chief Judge. This condemnation case raises the issue of juror misconduct concerning statements allegedly made by one or more jurors in the jury room, during deliberations, indicating that they had made up their minds concerning the amount of compensation to be awarded. Finding no error, we affirm.

Appellee Arkansas State Highway Commission filed separate declarations of taking and complaints for condemnation on each of two tracts owned by appellants D.B.&J. Holden Farms Limited Partnership; Brouce Holden, Jr., Trust; and James R. Holden Trust (collectively Holden). The trial court, by agreed order, consolidated the two cases. The Commission estimated the condemned property to be worth $138,661 and deposited that amount into the registry of the court.

At trial, the Commission's expert, Tommy Matthews, testified that, in his opinion, the difference in the before and after values of the two tracts was $138,661. Holden's expert, John Conner, Jr., testified that he calculated the difference in the before and after values of the two tracts to be $1,364,932. The jury retired to deliberate but returned five minutes later with a verdict in the amount of $138,779. Judgment was entered on the verdict.

Holden filed a motion for new trial based on jury misconduct and attached affidavits from three jurors. The affidavits recited that juror Helen Sharp made a statement upon entering the jury room to the effect that she had made up her mind as to the amount of compensation to be awarded to Holden and was ready to vote. The affidavits also stated that another juror, Ronny Dale Templeton, had probably made up his mind beforehand. The trial court struck the affidavits as being barred by Ark. R. Evid. 606(b) and denied the motion for new trial. Holden raises two points on appeal: that the trial court abused its discretion in striking the affidavits and that the trial court erred in denying the motion for a new trial.

Holden's first point is that the trial court erred in striking the juror affidavits pursuant to Ark. R. Evid. 606(b). That rule provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000). This court will not presume prejudice in such situations. *Id.* Jurors are presumed unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *McIntosh v. State*, 340 Ark. 34, 8 S.W.3d 506 (2000);

*Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996). Whether prejudice occurred is also a matter for the sound discretion of the trial court. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001).

 By its plain language, Arkansas Rule of Evidence 606(b) precludes inquiry into "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon [the juror's] or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict[.]" *See also Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). A juror "may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Ark. R. Evid. 606(b). The purpose of the rule is to balance the freedom of secret jury deliberations with the ability to correct an irregularity in those deliberations. *Davis v. State*, 330 Ark. 501, 956 S.W.2d 163 (1997). Holden does not allege any improper external influence.

The trial court properly refused to consider the affidavits because they referred to events occurring during the internal deliberations of the jury. *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985). Rule 606(b) embodies the public interest in preserving the confidentiality of jury deliberations, *see National Bank of Commerce v. HCA Health Services of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990), and ensures that jury deliberations remain secret, unless it becomes clear that the jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence. *Watkins v. Taylor Seed Farms, Inc.*, 295 Ark. 291, 748 S.W.2d 143 (1988).

Relying on *State v. Cherry, supra*, Holden argues that the supreme court has construed Rule 606(b) as only applying to formal jury deliberations and that such deliberations did not occur in the present case.[1] *Cherry* is distinguishable from the present case. In that case, Cherry was convicted of first-degree murder and sentenced to life in prison. He filed a motion for new trial alleging jury misconduct. During the trial, an alternate juror had informed the trial court that the jurors had been discussing the case during breaks and that some of the jurors had made up their minds

---

[1] Holden does not argue that the relevant event was Sharp's making up her mind prior to the submission of the case to the jury and that this event occurred in the courtroom, before deliberations began. We express no opinion on this point.

concerning Cherry's guilt before the case was submitted to them. The State argued that there was no precedent for granting a new trial based on juror misconduct when the conduct did not involve extraneous prejudicial materials or improper outside influence. After conducting a hearing, the trial court found that, based on the testimony of the alternate juror, Cherry was entitled to a new trial. On appeal, the supreme court held that Cherry was deprived of a fair trial because some jurors may have made up their minds concerning his guilt before the case was submitted to them. Because the issue arose after the conclusion of the trial, the only appropriate option for the trial court was to grant a new trial.

Unlike *Cherry*, the only evidence of jury misconduct in the present case occurred after formal deliberations had begun. We believe that formal deliberations had begun because the jury had received its instructions and heard the arguments of counsel before retiring to the jury room. *See* Ark. Code Ann. § 16-64-114 (1987). Deliberation in the context of the jury function means that a properly formed jury, comprised of the number of qualified persons required by law, are within the secrecy of the jury room analyzing, discussing, and weighing the evidence which they have heard with a view to reaching a verdict. *Borman v. Chevron USA, Inc.*, 65 Cal. Rptr. 2d 321 (Cal. App. 1997); *Rushing v. State*, 565 S.W.2d 893 (Tenn. Crim. App. 1977). Under our case law, any inquiry into events occurring in the sanctity of the jury room is prohibited by Rule 606(b). We cannot say that the trial court abused its discretion in striking the jurors' affidavit and, therefore, affirm on this point.

Holden's second point is that the trial court erred in failing to grant the motion for new trial, based on the alleged jury misconduct. Jury misconduct is a basis for granting a new trial under Ark. R. Civ. P. 59(a)(2). *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). The decision whether to grant a new trial under Rule 59(a)(2) is discretionary with the trial court, which will not be reversed absent an abuse of that discretion. *Id.* The burden of proof in establishing jury misconduct is on the moving party. *Id.* The moving party must show that the alleged misconduct prejudiced his chances for a fair trial and that he was unaware of this bias until after trial. *Id.*; *Owens v. State*, 300 Ark. 73, 777 S.W.2d 205 (1989); *Hendrix v. State*, 298 Ark. 568, 768 S.W.2d 546 (1989). The appellant bears the burden of demonstrating that a reasonable possibility of prejudice resulted from the

alleged improper conduct. *See Kail v. State,* 341 Ark. 89, 14 S.W.3d 878 (2000); *Griffin v. State,* 322 Ark. 206, 909 S.W.2d 625 (1995).

Without the juror affidavits, Holden cannot prove jury misconduct. *Waterfield v. Quimby,* 277 Ark. 472, 644 S.W.2d 241 (1982). Further, Holden cannot show prejudice from the alleged misconduct. The length of time of jury deliberation is not, of itself, a ground for a new trial. *Dovers v. Stephenson Oil Co.,* 354 Ark. 695, 128 S.W.3d 805 (2003); *Wingfield v. Page,* 278 Ark. 276, 644 S.W.2d 940 (1983); *Breitenberg v. Parker,* 237 Ark. 261, 372 S.W.2d 828 (1963). As the supreme court stated in *Breitenberg*:

> The fact that the jury returned a verdict in about eight minutes after having the case submitted to them does not indicate to us that Beach did not receive a fair trial when the issues of fact were so clearly drawn. It is true that a verdict should be the result of dispassionate consideration and the jury, if necessary, should deliberate patiently until they reach a proper conclusion concerning the issues submitted to them. Yet where the law does not positively prescribe the length of time a jury shall spend in deliberation, the courts will not apply an arbitrary rule based upon the limits of time.

237 Ark. at 265, 372 S.W.2d at 831 (quoting *Beach v. Commonwealth,* 246 S.W.2d 587 (Ky. 1952)). The Commission's expert testified that the difference in the before and after values of the two tracts was $138,661. The jury could have reasonably relied on this testimony in arriving at its verdict. We affirm on this point.

Affirmed.

HART and GLADWIN, JJ., agree.