2011 Ark. App. 297

**Patricia MILNER, Randall Brown, and Donna Donaldson, Appellants**

**v.**

**Rex Edward LUTTRELL, M.D., Appellee.**

**No. CA 09–757.**

Court of Appeals of Arkansas.

April 20, 2011.

Rehearing Denied May 25, 2011.

Stephanie Ann Linam, Charles Phillip Boyd, Jr., The Boyd Law Firm, Little Rock, for appellants.

T. Michelle Ator, Friday, Eldredge & Clark, LLP, Little Rock, for appellee.

CLIFF HOOFMAN, Judge.

In this medical-negligence case, appellant Patricia Milner appeals from a jury verdict in favor of appellee Dr. Rex Luttrell.[1] She argues that the circuit court erred in 1) denying her request for a mistrial or other relief when defense counsel displayed a document that mentioned health insurance during opening statements; 2) denying a new trial based on jury misconduct; and 3) prohibiting the use of Dr. Luttrell's deposition from a previous case. We find no error and affirm.

## I. *Background*

Mrs. Milner underwent a gastric-bypass operation in 1977. In the following years, she experienced problems with reflux and consulted Dr. Forest Miller. Dr. Miller referred her to Dr. Luttrell, who determined that Mrs. Milner needed a "revision" of her previous bypass. Surgery was scheduled for May 13, 1999, and Milner signed a pre-operative consent form describing the procedure as a "reversal gastric bypass and incisional hernia repair." According to Milner, she understood the term "reversal" to mean that she would be

---

1. Mrs. Milner died after the case was tried. The circuit court substituted her heirs, Randall Brown and Donna Donaldson, as plaintiffs. For the sake of clarity, we will refer to Mrs. Milner as the appellant.

restored to her natural, pre-bypass condition. When Dr. Luttrell performed the surgery, however, he replaced the existing bypass with another bypass called a Roux–en–Y. Post-operatively, Milner experienced more gastrointestinal problems and had the Roux–en–Y reversed by another doctor.

On May 2, 2001, Milner sued Dr. Luttrell for negligence in performing the Roux–en–Y bypass without her consent and in performing it incorrectly. A jury found Dr. Luttrell not liable, and the circuit court entered judgment in his favor. Milner sought relief in posttrial motions, which the court denied, leading to this appeal.

II. *Denial of a mistrial and other relief*

▮ Prior to trial, the circuit court ruled that it would not allow evidence of insurance coverage regarding Milner's damages.[2] The parties therefore redacted any reference to insurance in various documents and invoices. During opening statements, however, Dr. Luttrell's attorney displayed a letter to the jury that contained a brief mention of insurance. The letter was written by Dr. Luttrell to Dr. Miller and primarily discussed Mrs. Milner's |₃reflux problem and potential treatment. As the attorney began to explain the letter to the jury, Milner's counsel approached the bench and pointed out the following language in the letter's third paragraph:

> I have initiated a letter *to her insurance company* and, once we get approval, I will get her scheduled with Dr. Kerry Ozment and, together, we will revise her to a much more functional status.

(Emphasis added.)

As a sanction for this mention of insurance, Milner asked the court to strike Dr.

Luttrell's answer and to proceed with a trial on damages alone. Dr. Luttrell's attorney noted that the letter had been removed from display during the bench conference, and she offered to redact the offending language. The court stated that an "inadvertent oversight" had occurred with regard to the letter and denied Milner's motion to strike. The court suggested that Milner consider an admonitory instruction to the jury, but Milner did not pursue that remedy. Milner now argues that the court erred in failing to strike the doctor's answer or declare a mistrial.

▮ The denial of a mistrial will not be reversed absent an abuse of discretion or manifest prejudice to the movant. *Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 149 S.W.3d 325 (2004). Likewise, the denial of a motion to strike will not be reversed absent an abuse of discretion. *Rodgers v. McRaven's Cherry Pickers, Inc.*, 302 Ark. 140, 788 S.W.2d 227 (1990). An abuse of discretion occurs when the circuit court acts improvidently or thoughtlessly, without due consideration. *See Fairpark, LLC v. Healthcare Essentials*, 2011 Ark. App. 146, 381 S.W.3d 852.

▮ |₄We note at the outset that Milner did not request a mistrial during the bench conference but raised that matter only in her posttrial motions. A motion for a mistrial must be made at the first opportunity, *Barber*, *supra*, and a party cannot obtain relief by asserting an argument for the first time in a posttrial motion. *See Cincinnati Life Ins. Co. v. Mickles*, 85 Ark. App. 188, 148 S.W.3d 768 (2004).

▮ In any event, Milner has not shown that she was entitled to either a

---

2. The court's order was based on the collateral-source rule, which prohibits the admission of evidence showing that an injured person received payments from another source. *Ebbing v. State Farm Fire & Cas. Co.*, 67 Ark. App. 381, 1 S.W.3d 459 (1999).

mistrial or the striking of Dr. Luttrell's answer. A mistrial is a drastic remedy that should be granted only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Barber, supra.* The striking of an answer is also considered a severe sanction. *Graham v. Sledge,* 28 Ark. App. 122, 771 S.W.2d 296 (1989).[3] While a drastic remedy such as a mistrial may be warranted when counsel intentionally violates the collateral-source rule and needlessly informs the jury of insurance coverage, *e.g., Hacker v. Hall,* 296 Ark. 571, 759 S.W.2d 32 (1988); *Patton v. Williams,* 284 Ark. 187, 680 S.W.2d 707 (1984); *Vermillion v. Peterson,* 275 Ark. 367, 630 S.W.2d 30 (1982), where insurance is not mentioned deliberately or with an improper purpose, the lesser remedy of an admonition to the jury will ordinarily suffice. *See generally Synergy Gas Corp. v. Lindsey,* 311 Ark. 265, 843 S.W.2d 825 (1992); *Lin Mfg. Co. v. Courson,* 246 Ark. 5, 436 S.W.2d 472 (1969); *First Nat'l Bank of Springdale v. Hobbs,* 248 Ark. 76, 450 S.W.2d 298 (1970).

In this case, defense counsel briefly and inadvertently displayed a letter containing the words "her insurance company" during opening statements. Milner acknowledged during a posttrial hearing that the incident was probably accidental. Milner also declined the court's suggestion to admonish the jury. Under these circumstances, we cannot say that the circuit court abused its discretion in denying more extreme relief.

### III. *Denial of a new trial for jury misconduct*

During voir dire, Milner's attorney, Charles Boyd, asked potential jurors if they had any close friends or relatives who were doctors or associated with the medical profession. Venireperson Cheryl Brewer stated that she had been a physician's office manager for thirty years. Brewer was later seated on the jury and served as foreman.

After trial, Boyd and his co-counsel, Matthew Lunde, submitted affidavits to the court stating that they had learned from an unnamed juror that two jurors on the panel worked for a physician and knew the standards for informed consent and making entries in medical records. Boyd and Lunde later contacted Cheryl Brewer, who allegedly described her work-related knowledge regarding a doctor's option to disregard the patient's consent form if the doctor determined that another procedure was necessary and her knowledge that "if surgery is not done within forty eight hours of a consent . . . another consent had to be signed." Based on these allegations, Milner sought a new trial on the ground that the jury had been exposed to extraneous prejudicial information in reaching its verdict.

During the motion hearing, the circuit court declined to hear testimony from Brewer but allowed Milner to proffer a synopsis of what Brewer would say if called. The proffer essentially tracked the affidavits, which set forth Brewer's knowledge of informed consent and medical records obtained in the course of her vocation. Following the hearing, the court denied Milner's new-trial motion.

The decision whether to grant a new trial for jury misconduct will not be reversed absent an abuse of that discretion. *D.B. & J. Holden Farms Ltd. P'ship*

---

**3.** The striking of a defendant's answer is traditionally considered a discovery sanction. Ark. R. Civ. P. 37(b) & (d) (2010). We make no comment as to whether such a sanction should be available during trial for evidentiary violations.

*v. Ark. State Highway Comm'n,* 93 Ark. App. 202, 218 S.W.3d 355 (2005). The moving party has the burden of proving misconduct and must demonstrate a reasonable possibility of prejudice resulting from the alleged misconduct. *Id.*

The threshold issue on this point is whether the circuit judge was permitted to consider the affidavits and testimony proffered by Milner. Rule 606(b) of the Arkansas Rules of Evidence provides that a juror may not testify as to any matter or statement occurring during the course of deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict, or concerning his mental process in connection therewith. Nor may a juror's affidavit or evidence of any statement by him be received on such matters. Ark. R. Evid. 606(b) (2010). A juror may, however, testify as to whether "extraneous prejudicial information" was improperly brought to the jury's attention or whether any "outside influence" was improperly brought to bear on any juror. *Id.* Rule 606(b) embodies the public interest in preserving the confidentiality of jury deliberations and ensures that jury deliberations remain secret unless it becomes clear that the jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence. *Waste Mgmt. of Ark., Inc. v. Roll Off Serv.,* 88 Ark. App. 343, 199 S.W.3d 91 (2004).

Milner argues that the jury in this case was exposed to extraneous prejudicial information in the form of a juror's specialized knowledge of medical records and informed consent. We disagree. The issue of extraneous prejudicial information has arisen most frequently when jurors have visited an accident scene during trial and reported their observations to other jury members. *See St. Louis Sw. Ry. Co. v.*

*White,* 302 Ark. 193, 788 S.W.2d 483 (1990); *Borden v. St. Louis Sw. Ry. Co.,* 287 Ark. 316, 698 S.W.2d 795 (1985); *B. & J. Byers Trucking, Inc. v. Robinson,* 281 Ark. 442, 665 S.W.2d 258 (1984); *Campbell v. Hankins,* 2009 Ark. App. 479, 324 S.W.3d 358. This case, however, does not involve a juror's foray outside the courthouse to gather extrinsic information. Rather, it involves information that the juror learned prior to trial in the ordinary scope of her life experiences and carried with her into the jury room. In that regard, the present case is more akin to *Watkins v. Taylor Seed Farms, Inc.,* 295 Ark. 291, 748 S.W.2d 143 (1988). In *Watkins,* our supreme court held that a juror's remark to the panel about information she supposedly knew about the appellants' attorney did not constitute extraneous prejudicial information as envisioned by Rule 606(b). The court appreciated the appellants' concern about a juror's harboring a hidden bias or prejudice but held that the appellants' proffered evidence "is not included in the exception under Rule 606(b). . . ." *Id.* at 294, 748 S.W.2d at 145.

Moreover, the great weight of authority in other jurisdictions is that a juror's professional or vocational knowledge does not qualify as extraneous prejudicial information when brought into the jury room. In *Hard v. Burlington Northern Railway Co.,* 870 F.2d 1454 (9th Cir.1989), a juror allegedly discussed during deliberations his knowledge of X-ray interpretation and opined that the plaintiff's X-ray showed no injury. The appeals court concluded that this did not constitute extraneous prejudicial information because it is expected that jurors will bring their life experiences to bear on the facts of a case. *See also Grotemeyer v. Hickman,* 393 F.3d 871 (9th Cir.2004) (juror was a doctor); *Crawford v. Head,* 311 F.3d 1288 (11th Cir.2002) (juror was a nursing student); *U.S. v. Holck,* 398

F.Supp.2d 338 (E.D.Pa.2005) (juror was a realtor); *Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738 (Tenn.Ct.App.1990) (juror was married to a nurse).

In light of these authorities, we conclude that Cheryl Brewer's vocational knowledge of medical records and informed consent did not constitute extraneous prejudicial information under Rule 606(b). The rule therefore prohibited the circuit court from considering Milner's affidavits and testimony and, consequently, the court had no evidence on which to grant a new trial. *See Waterfield v. Quimby*, 277 Ark. 472, 644 S.W.2d 241 (1982).

Even if Brewer's knowledge was considered extraneous, the affidavits and testimony proffered by Milner would be insufficient to show a reasonable possibility of prejudice. The attorneys' first set of affidavits did little more than recount their conversation with an unnamed juror to the effect that other unnamed jurors on the panel possessed specialized medical knowledge. Later, the attorneys' affidavits reported a telephone conversation with Cheryl Brewer to the effect that she possessed work-related knowledge of informed consent and medical records. Brewer's proffered testimony, as paraphrased by Milner's counsel, did not add appreciably to the affidavits. In these circumstances, where the evidence before the trial court consisted of affidavits from the defeated attorneys and the proffered, unsworn testimony of a single juror, the court did not abuse its discretion in refusing to grant a new trial. *See generally Waste Mgmt. of Ark., supra* (holding that a single juror's affidavit, stating that a verdict had been mistakenly recorded, was not sufficient to warrant a new trial). Further, the limited information contained in the proffered materials meant that the court was left to speculate about whether any jurors were actually affected by Brewer's knowledge.

*See Diemer v. Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993) (affirming the denial of a new trial where the alleged juror misconduct was not described with sufficient specificity). We therefore affirm on this point.

Milner also contends that an unnamed juror did not respond honestly when asked during voir dire if he or she worked in the medical field. This is pure speculation, as the record contains no information regarding the juror's identity or profession.

## IV. *Prohibiting the use of Dr. Luttrell's previous deposition*

At trial, Dr. Luttrell testified that he attended St. George's University medical school, which was located in Bay Shore, New York, and that he studied internal medicine at East Tennessee State for three years before undergoing five years of surgical training. He also stated that he was board certified in general surgery. On cross-examination, Dr. Luttrell acknowledged that St. George's medical school was headquartered in New York but that he attended a branch of the school located in the West Indies. Following this testimony, Milner prepared to impeach Dr. Luttrell with his deposition testimony from a prior case in which he stated that he had been cut from the residency program at East Tennessee after two years, though he later reentered the program and completed the full five years. The circuit court refused to allow the deposition, not only because it was from another lawsuit but also because "what happened in ... residency programs or internships is not relevant to this proceeding. If he is now board certified, he is a competent surgeon."

Deposition testimony from a prior case may be used for impeachment purposes. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). Neverthe-

less, the court in this case did not abuse its discretion in excluding the prior deposition on relevancy grounds. *Advanced Envtl. Recycling Techs. v. Advanced Control Solutions*, 372 Ark. 286, 275 S.W.3d 162 (2008) (citing the abuse-of-discretion standard in reviewing a court's evidentiary ruling). Whatever difficulties Dr. Luttrell may have encountered during his early academic career and residency, the fact remains that he completed his surgical residency and was board certified in surgery when he operated on Mrs. Milner. Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ark. R. Evid. 103(a) (2010). Milner has not shown that the exclusion of Dr. Luttrell's deposition testimony was so significant as to warrant reversal.

We therefore affirm the circuit court's judgment entered on the jury verdict. Our affirmance renders Dr. Luttrell's cross-appeal regarding an evidentiary issue moot.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.