2012 Ark. App. 553

Kay HOUCHINS, as Administratrix
of the Estate of Joyce Estes,
Deceased, Appellant

v.

HOME CARE PROFESSIONALS OF
ARKANSAS, INC., Lisa Scott, Juanita
Bradley, and Sharon Ruth "Susie"
Kincaid, Appellees.

No. CA 11–1247.

Court of Appeals of Arkansas.

Oct. 3, 2012.

Gary Holt & Associates, P.A., by: Breean Walas, Little Rock, for appellant.

Wright, Lindsey & Jennings, LLP, Little Rock, by: Roger A. Glasgow, Troy A. Price, and Antwan D. Phillips, for appellees.

CLIFF HOOFMAN, Judge.

Appellant Kay Houchins, as the administratrix of the estate of her mother, Joyce Estes, brings this appeal from the order of the Pulaski County Circuit Court denying her motion for a new trial following a jury verdict in favor of the appellees, Home Care Professionals of Arkansas, Inc. (HCPA), and three of HCPA's employees, Lisa Scott, Juanita Bradley, and Sharon Kincaid (collectively, HCPA). We affirm.

## Background

In May 2006, HCPA was hired to care for both Estes and her husband in their home. Estes was eighty-five years old and suffered from Alzheimer's disease. In April 2007, Estes fell in her bathroom while Scott and Bradley slept. She later died of her injuries in May 2007.

On February 15, 2008, Houchins sued HCPA, Scott, and Bradley for wrongfully causing Estes's death. The complaint asserted claims for negligence, breach of contract, and wrongful death.[1] In a first amended complaint, Houchins added Kincaid as a defendant and added claims for deceptive trade practices, deception, fraud, false pretense, and suppression and omission of material facts. A third amended complaint added a claim for negligent contracting and hiring, training, supervision and retention. HCPA, Bradley, Scott, and Kincaid separately answered the complaints and denied that Scott and Bradley were agents, employees, or servants of HCPA.

In February 2010, HCPA filed a motion for partial summary judgment, as well as a motion in limine to exclude evidence of Bradley's criminal records, tax liens filed against HCPA, and the lapse of Scott's Certified Nursing Assistant certification. By order entered on April 12, 2010, the circuit court denied HCPA's motion for partial summary judgment, but granted HCPA's motion to exclude Bradley's criminal records, HCPA's tax liens, and the lapse in Scott's certification.

The case proceeded to a jury trial over six days in March 2011. At the conclusion, the jury was asked to decide the case by answering a series of twenty-four interrogatories. The jury found no negligence on the part of HCPA, Scott, Bradley, Kincaid, or Estes. The jury found that Scott and Bradley were independent contractors. According to the jury, HCPA was not negligent in the hiring, training, or supervising of its employees. The jury also found for HCPA and Kincaid on the allegations of deceptive practices, fraud, suppression or omission of material facts, and false representations. The jury did not allocate any fault to HCPA, Bradley, Scott, Kincaid, or Estes. The judgment on the jury's verdict was entered on March 28, 2011. Houchins timely filed her motion for new trial on April 11, 2011. After a hearing, the circuit court denied her motion for new trial. This appeal followed.

## Arguments on Appeal

In three points on appeal, Houchins argues that the circuit court erred by (1) not following mandatory procedures in communications with the jury, (2) not granting her a new trial because of jury misconduct, and (3) excluding evidence related to the criminal background of Scott and Bradley and the lapse in Scott's certification.

## New Trial Motion

Houchins filed a motion for new trial making the same arguments she makes on appeal concerning juror misconduct during voir dire, misconduct by the bailiff and the jury foreman during deliberations, and the exclusion of evidence regarding background checks for Scott and Bradley. In support of Houchins's motion for new trial, Connie Grace, one of her attorneys, submitted an affidavit stating that during voir dire, Henrick Larsen did not respond when the potential jurors were asked if any of them had experience caring for the elderly, including a parent or other family member, or when asked if any of them had been around someone who fell or had wit-

---

**1.** The complaint also included claims against John Doe, Inc., and John Does 1 through 10, who were alleged to be employees of HCPA that came into contact with Estes.

nessed a fall. Grace also stated that, after the trial, she learned from Denise Graham, another member of the jury, that Larsen had told her (Graham) that he cared for his invalid wife, that she had fallen, and that he could be found liable. Grace next addressed the allegation that some of the jurors had made up their minds prior to deliberations; that the jury only deliberated for approximately ninety minutes before returning its verdict; that the jury did not have the exhibits with them in the jury room during deliberations; and that the bailiff appeared to have improperly answered a question from the jury instead of conducting the jury into the courtroom.

An affidavit from Denise Graham was also submitted in support of Houchins's motion. In it, Graham stated that the jury foreman, George Johnson, advised the jury that Medicare would pay the medical expenses and that Houchins would have to repay Medicare if the jury found for her. She also stated that Johnson had agreed with another juror that the jury could not find for Houchins unless it answered "yes" to the first two interrogatories. According to Graham's affidavit, Johnson advised the jury that Houchins had the burden of proving that Scott and Bradley were independent contractors. Graham also recounted Larsen's statement about his wife falling and his being found liable. Finally, Graham said that the closing argument by HCPA's attorney appeared to have influenced several jurors to get the process over with quickly.

Graham submitted another affidavit that addressed whether the bailiff had improperly communicated with the jury during deliberations. Graham said that the jury foreman had informed the bailiff that the jury had a question concerning "the judge's instructions order of paper work and if we answer no to one instructions can answer yes to another. [The bailiff] left and return to ask the judge response yes."

### Discussion

We reverse the denial of a motion for a new trial only if there has been a manifest abuse of discretion. *New Prospect Drilling Co. v. First Commercial Trust, N.A.*, 332 Ark. 466, 966 S.W.2d 233 (1998).

Arkansas Rule of Evidence 606(b) provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Although the parties argue whether it was appropriate for the circuit court to consider the affidavits submitted by Grace and Graham, we need not decide the question ourselves because the circuit court declined to rule on the propriety of the affidavits. *Arkansas Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, 386 S.W.3d 400. However, we point out that it was necessary for the circuit court to consider the affidavits in order to determine whether the jury was in fact exposed to any extraneous material. *See St. Louis Sw. Ry. Co. v. White*, 302 Ark. 193, 788 S.W.2d 483 (1990).

### A. Bailiff's Communications with the Jury

Houchins first argues that she is entitled to a new trial because the bailiff improperly answered a question from the jury during their deliberations.

Two statutes govern this issue. The first, Arkansas Code Annotated section 16–64–115 (Repl.2005), provides as follows:

> After the jury has retired for deliberation, if there is a disagreement between them as to any part of the testimony or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their counsel.

The other provision is section 16–64–116:

> (a) When the case is finally submitted to the jury, they may decide in court or retire for deliberation.
>
> (b)(1) If the jury retires, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court, subject to the discretion of the court to permit them to separate temporarily at night and at their meals.
>
> (2) The officer having them under his or her charge shall not allow any communication to be made to them, or make any himself or herself, except to ask them if they have agreed upon their verdict, unless by order of the court, and he or she shall not, before their verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon.

According to Houchins, the bailiff violated these statutes by not conducting the jury into the courtroom, and, instead, answering the jury's question himself.

Any violation of section 16–64–115 is presumed prejudicial. *Lackey v. Mays,* 103 Ark.App. 70, 286 S.W.3d 193 (2008). However, in addition to Graham's second affidavit described above, Bailiff Forrest submitted his own affidavit stating that, when the jury informed him they had a question, he told them that he had to notify the attorneys. He said that he went to the courtroom and announced that the jury had a question. He then stated that, when he returned to escort them into the courtroom, the jury told him that they had figured it out. Forrest said that he then made the announcement in the courtroom that the jury had figured it out and answered their own question. He also asserted that he did not tell the jurors anything.

It is clear that the circuit court did not give much weight to juror Graham's second affidavit—the one in which she asserted that the bailiff had answered a question for the jury—calling it a "fishing expedition" and noting that the jury vote was eleven to one, with Graham the lone holdout. When competing affidavits are presented, it is a matter of credibility for the circuit court to determine. *Holloway v. State,* 363 Ark. 254, 213 S.W.3d 633 (2005). Under these circumstances, we cannot say that the circuit court abused its discretion by refusing a new trial on this basis.

### B. Jury Misconduct

Houchins's second point is that the circuit court abused its discretion by denying her motion for a new trial based on several specific instances of juror misconduct. The specific instances include a juror concealing information during voir dire; the jury foreman introducing extraneous information during deliberations; the jury failing to follow the circuit court's instruc-

tions; and the short amount of time that the jury spent in its deliberations.

Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *State v. Cherry,* 341 Ark. 924, 20 S.W.3d 354 (2000); *D.B. & J. Holden Farms Ltd. P'ship v. Arkansas State Highway Comm'n,* 93 Ark.App. 202, 218 S.W.3d 355 (2005). This court will not presume prejudice in such situations. *Cherry, supra; Holden Farms, supra.* Jurors are presumed unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *McIntosh v. State,* 340 Ark. 34, 8 S.W.3d 506 (2000); *Esmeyer v. State,* 325 Ark. 491, 930 S.W.2d 302 (1996). Whether prejudice occurred is also a matter for the sound discretion of the circuit court. *Smith v. State,* 343 Ark. 552, 39 S.W.3d 739 (2001).

Houchins's first instance of juror misconduct is her assertion that juror Henrick Larsen failed to disclose certain information when questioned during voir dire. During voir dire, Houchins's attorney asked the venire if any of them personally cared for an aging parent by living with them. After noting that several jurors had raised their hands, the attorney asked if any of those believed that it would affect their ability to be neutral in the case. The jurors were shown as responding in the negative.

In order to warrant the granting of a new trial on the grounds of juror misconduct, a party must first demonstrate that a juror failed to honestly answer a question or deliberately concealed a matter during voir dire, and must then further show that a correct response would have provided a valid basis for a challenge for cause. *Berry v. St. Paul Fire & Marine Ins. Co.,* 328 Ark. 553, 944 S.W.2d 838 (1997). Additionally, the complaining party has the burden of establishing that (1) diligence was used to ascertain the desired information and that (2) he made known to the juror the specific information desired. *Id.* We will affirm where there is substantial evidence to support a circuit court's finding as to whether a party has met its burden. *Id.*

We cannot say that Houchins has met her burden of establishing juror misconduct on this point. The abstract shows that Houchins's attorney asked the members of the venire if any of them had tried to personally care for an aging parent by living with them. A number of hands were raised. However, counsel for Houchins failed to ask appropriate follow-up questions. It was left to HCPA's attorney to ask more specific questions of juror Larsen, including the question if Larsen had a loved one who needed home care. Larsen responded that his parents needed home care, but that he was working in Denmark and unable to provide that care. Neither party specifically asked and Larsen did not mention his wife. If the parties fail to ask a pertinent question and no false answer was made, the verdict is not void or voidable. *Zinger v. State,* 313 Ark. 70, 852 S.W.2d 320 (1993).

We consider three of Houchins's allegations of juror misconduct involving foreman George Johnson together. These allegations are that Johnson told the jury (1) that the decedent was receiving Medicare benefits, which would have to be repaid in the event that Houchins was awarded damages; (2) that the jury could not find for Houchins on any claim without finding in her favor on the first two interrogatories concerning whether Bradley or Scott were negligent; and (3) that Houchins had the burden of proof on the issue of whether Bradley or Scott were independent contractors. Houchins argues that these

statements show that the jury was exposed to extraneous information and did not follow the court's instructions.

■■■■ We disagree that the information is "extraneous" within the meaning of Ark. R. Evid. 606(b) because Graham's affidavits describe the jurors' individual or collective thought processes. Our courts have been very strict in interpreting Rule 606(b) to allow inquiry into a juror's thought processes only where the juror's testimony concerns extraneous information or outside influence. *Waste Mgmt. of Ark. v. Roll Off Serv., Inc.,* 88 Ark.App. 343, 199 S.W.3d 91 (2004). These thought processes include juror motives, the effect the evidence had on the jurors, the weight given to the evidence by particular jurors, and the jurors' ₁₀intentions and beliefs. *Id.* Any averments concerning these mental processes are inadmissible to impeach the verdict. *Id.* In *Watkins v. Taylor Seed Farms, Inc.,* 295 Ark. 291, 748 S.W.2d 143 (1988), our supreme court held that a juror's remark to the panel about information she supposedly knew about the appellants' attorney did not constitute extraneous prejudicial information as envisioned by Rule 606(b). This court has previously held that knowledge obtained by a juror and brought into the jury room from the ordinary scope of his life experiences, including knowledge obtained through his profession or vocation, does not qualify as "extraneous prejudicial information" as contemplated by Rule 606. *Blake v. Shellstrom,* 2012 Ark. App. 28, 388 S.W.3d 57; *Milner v. Luttrell,* 2011 Ark. App. 297, 384 S.W.3d 1. During voir dire, Johnson stated that he was a registered nurse providing hospice care at a nursing home. He said that his position entailed providing the care, not determining who qualifies. Houchins argues that Johnson's statement goes beyond his own observations and experiences gathered as

a hospice nurse caring for a patient. Just because Johnson was a hospice nurse does not mean that he could not have acquired knowledge of Medicaid in the course of his career. As the trial court noted in denying Houchins's new-trial motion, Graham's affidavit merely discussed what happened in the jury room, and "nobody brought any evidence, evidence other than their own experiences with their own knowledge. You can't take that away from them."

Houchins cites *State v. Cherry, supra,* in support of her argument as it pertains to the allegation of jurors having made up their minds prior to the conclusion of the trial. We distinguished *Cherry* in *Holden Farms* on the basis that the fact of premature deliberations was ₁₁made known to the court prior to the conclusion of the trial in the *Cherry* case, while, in both the present case and *Holden Farms,* the only evidence of jury misconduct was recounted in the affidavit of jurors describing what occurred during deliberations. Moreover, the offending jurors are not named in Graham's affidavit, a factor the supreme court considers in determining prejudice. *Diemer v. Dischler,* 313 Ark. 154, 852 S.W.2d 793 (1993).

■■■■ Houchins also cites as misconduct the fact that the jury only deliberated for approximately an hour and a half before returning its verdict. However, the length of time of jury deliberation is not, of itself, a ground for a new trial. *Holden Farms, supra.* It is the evidence and not the time that the jury may have taken in reaching its verdict that is controlling in the consideration of a motion for a new trial. *Mahoney v. Smith,* 78 R.I. 56, 78 A.2d 798, 800 (1951). Houchins also relies on the fact that the exhibits were not delivered to the jury room. But there is no evidence that she requested the exhibits to be delivered, and the circuit court is not required to send the evidence to the jury room with the jury. *See Nathan v.*

*State,* 235 Ark. 704, 361 S.W.2d 637 (1962) (construing what is now Ark.Code Ann. § 16–89–125(d)(3) (Repl.2005)).

 Another of the purposes of Rule 606(b) is to prevent juror tampering or to prevent a single juror from destroying a verdict. In *State v. Osborn,* 337 Ark. 172, 988 S.W.2d 485 (1999), our supreme court stated:

> Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath.

*Id.* at 175–76, 988 S.W.2d at 486–87. Here, the circuit court noted that the jury verdicts on the questions of whether Bradley or Scott were negligent were eleven to one, with Graham the lone holdout. We cannot say that the circuit court abused its discretion in declining to grant a new trial based on juror misconduct.

### Exclusion of Evidence

 For her third and final point, Houchins argues that the circuit court abused its discretion in excluding evidence related to the criminal-background reports for Lisa Scott and Juanita Bradley and the lapse in Scott's CNA certification. She argues that this evidence was relevant to her claims for negligent hiring and retention and for violation of the Arkansas Deceptive Trade Practices Act. HCPA filed a motion in limine seeking to preclude the introduction of such evidence. The circuit court granted the motion relating to the background checks, criminal records, and certification. Evidentiary rulings are a matter of discretion and are reviewed only for abuse of that discretion. *See Ozark Auto Transp., Inc. v. Starkey,* 327 Ark. 227, 937 S.W.2d 175 (1997).

In her deposition, Bradley testified that she pled guilty to shoplifting charges. She also had three DWI convictions, the most recent being more than five years earlier. She said that she had voluntarily attended AA meetings, but did not recall whether she had been ordered to do so. She also said that she believed HCPA did a background check when she was hired.

In her deposition, Scott testified that she was permanently disabled as a result of an October 2003 accident that impaired her gait and reduced her range of motion in her right arm. She said that her CNA certification expired in October 2005 because the renewal paperwork was lost. She said that she informed HCPA of her physical limitations and of her lapse in certification. She believed that HCPA ran a background check on her, but she was not sure if they checked her certification.

Houchins argues that the evidence was relevant to her negligent hiring and Deceptive Practices Act claims and to show, contrary to HCPA's advertising, that HCPA did not conduct proper background checks prior to placing Bradley and Scott in the Estes home. Houchins argues that Bradley's convictions for failure to appear show that she is unreliable and, therefore, should not have been providing care to Ms. Estes when she fell. Likewise, Houchins argues that the reason for the lapse in Scott's certification goes to the argument that she should not have been put in the position of providing care for Ms. Estes.

 The circuit court properly excluded the evidence of Bradley's criminal convictions. Arkansas Rule of Evidence 609(a) generally provides that a party can attack the credibility of a witness by showing that the witness was convicted of a crime punishable by death or imprisonment in excess of one year, or a crime involving dishonesty or false statements. Rule 609(b) imposes a ten-year limitation on the use of convictions. With one excep-

tion, none of the convictions show that they were crimes involving dishonesty or were punishable by death or imprisonment in excess of one year. While the shoplifting conviction did involve dishonesty, it was more than twenty years old. The circuit court relied on this basis when it excluded the convictions.

The fact is that HCPA did have criminal-background checks prepared by the Arkansas State Police on both Scott and Bradley. Houchins places great emphasis on the fact that the background checks are dated after Estes's fall. However, there is no showing as to when HCPA requested the checks or that it was somehow responsible for the delay. On their employment applications, both Scott and Bradley indicated limitations on heavy lifting. Both listed their CNA certification and Scott stated that hers had expired in October 2005. Prior to trial, Houchins argued that the lapse in Scott's certification went to the issue of whether she was qualified to care for Estes because of her inability to do heavy lifting. Bradley had the same limitation. However, there is no showing that this limitation had anything to do with Estes's fall. Generally, the party who offers evidence has the burden of proving its admissibility. *Benson v. Shuler Drilling Co.*, 316 Ark. 101, 871 S.W.2d 552 (1994). Without this connection between the caregivers' limitations and Estes's fall, we cannot say that Houchins has met her burden of proving the admissibility of the evidence. *Id.* Therefore, the circuit court did not abuse its discretion in granting HCPA's motion in limine.

Affirmed.

ABRAMSON and BROWN, JJ., agree.